**Nathaniel USHER, Petitioner,**

v.

**Al GOMEZ, Respondent.**

**No. C–89–2940–CAL.**

United States District Court, N.D. California.

Sept. 9, 1991.

Rommel Bondoc, San Francisco, Cal., for petitioner.

Mary Roth, Deputy Atty. Gen., State of Cal., San Francisco, Cal., for respondent.

## ORDER AND OPINION

LEGGE, District Judge.

Petitioner seeks a writ of habeas corpus ordering his release from state prison. He alleges that the state violated his sixth amendment rights by failing to give him adequate notice that the prosecution intended to convict him of first degree murder under the theory of felony murder.

### I.

The history of this habeas corpus proceeding is lengthy. In 1985 Usher filed his first petition for a writ of habeas corpus (No. C–85–6106). In that petition he alleged three grounds for relief: (1) ineffective assistance of trial counsel; (2) cruel and unusual punishment because of the sentence imposed upon him; and (3) a violation of due process, because he was convicted on a felony murder theory after the underlying felony charge had been dismissed.

In 1986 this court denied that petition on the merits. However, in 1987 the court of appeals remanded the case to determine whether Usher had exhausted his state court remedies. On remand this court determined that petitioner had not exhausted his due process claim. This court gave petitioner the option of exhausting his due process claim and then returning to this court, or proceeding on the two exhausted claims. The order informed petitioner that if he chose the second option and later returned to this court with his due process claim, this court would not dismiss his later petition as an abuse of the writ.

Petitioner chose to proceed on his two exhausted claims of ineffective assistance of trial counsel and cruel and unusual punishment. Those claims were refiled as a new petition (No. C–88–0020). In 1988 this court denied both claims. Usher again appealed, raising all three of his original claims. The Ninth Circuit affirmed, but did not address the unexhausted due process claim. *Usher v. Vasquez*, 865 F.2d 266 (9th Cir.1988).

Petitioner then exhausted his due process claim in state court, and in 1989 he filed the present petition. The petition now alleges two claims: (1) his original due process claim that the jury convicted him of felony murder even though the underlying felony had been dismissed, and (2) the ineffective assistance of appellate counsel, based on appellate counsel's failure to raise the due process and other claims. In an order issued in October 1989 this court ruled that Usher had not exhausted the claim of ineffective assistance of appellate counsel. The court again offered plaintiff the option of exhausting this claim, or abandoning it and resubmitting the petition with just the due process claim that had been exhausted. In November 1989 petitioner refiled this petition raising only the

due process claim. This claim is therefore the sole subject of the present petition.

In July 1990 the Ninth Circuit Court of Appeals decided a case which raised claims similar to petitioner's. *Sheppard v. Rees,* 909 F.2d 1234 (9th Cir.1990). In September 1990 this court stayed further proceedings on this petition and ordered the appointment of counsel for petitioner, who had been acting *pro se,* in order to address the impact of *Sheppard* on petitioner's due process claim. Counsel was appointed, and in February 1991 the court directed counsel for both sides to submit briefs regarding the impact of *Sheppard.* In May 1991 this court heard oral argument and the petition was submitted for decision. The court concluded that no evidentiary hearing was necessary because the issues were ones to be resolved from the state court record. The court has considered the moving and opposing papers, the record and the applicable authorities, and concludes that petitioner's writ must be denied.

## II.

The facts of Usher's conviction are as follows: He was accused of the murder of a drug dealer, Raymond Prudhomme. After Prudhomme's death, Usher approached his pastor and told him that he was involved in the death of a man. The pastor advised Usher to turn himself into the police. Usher allegedly confessed to police authorities that he initially planned to rob the victim, but eventually decided that the only way to get away with the robbery was to eliminate Prudhomme. The police then arrested Usher on murder charges.

Usher later summoned the police to his cell and said that one Mack Robinson had conceived of the plan to lure Prudhomme to Robinson's apartment. Usher said that Robinson, instead of intimidating the victim with a gun, shot him as they prepared to rob him. The police searched Robinson's apartment and found the victim's blood on the walls and carpet.

Usher's defense was that he was merely present as a drug tester, that he was under the influence of drugs at the time of the murder, and that he confessed to the crime because some inducement was offered to him.

Usher was originally charged in a four count information with: (1) murder, California Penal Code § 187;[1] (2) personally using a firearm in commission of the murder, § 12022.5; (3) the felony of robbery, § 211; and (4) possession of a firearm by a previously convicted felon, § 12021. Prior to trial, petitioner's counsel filed a motion to dismiss the robbery count pursuant to California Penal Code § 995. The district attorney did not oppose the motion and conceded that there was insufficient evidence to support a robbery allegation. The Superior Court ordered the robbery count dismissed before trial. However, dismissal of the robbery charge did not under California law bar the prosecution from convicting Usher of felony murder with the robbery as the underlying felony. *People v. Uhlemann,* 9 Cal.3d 662, 666, 108 Cal. Rptr. 657, 659, 511 P.2d 609, 611 (1973); *People v. Van Eyk,* 56 Cal.2d 471, 477, 15 Cal.Rptr. 150, 153–54, 364 P.2d 326, 329–30 (1961).

During jury voir dire, the court explained the doctrine of felony murder to the potential jurors, and the prosecutor questioned the prospective jurors on that issue. (*See e.g.,* RT at 27–28, 35, 41, 44, 46, 73, 82, 87, 98–99, 146). In his opening statement, the district attorney informed the jury that he intended to prove that Usher planned the murder in order to commit robbery. (RT 203–206). No objection was made to those references to felony murder. Instead, defense counsel responded by asserting that the evidence would show that Usher was incapable of planning a murder, "let alone a robbery." (RT 209).

Before final argument, the trial judge stated for the record that defendant's counsel approved all of the instructions to be given to the jury, except an instruction relating to lesser included offenses. (RT 407). The trial court instructed the jury on the elements of premeditated murder, and on felony murder by means of robbery.

---

1. California Penal Code § 187 (Deering 1991) [hereinafter Cal.Penal Code].

(RT 409, 423–429, 444–446, 448). The trial court also instructed the jurors that both premeditated murder and felony murder are first degree murder, and that even if they differed on whether petitioner was guilty of premeditated murder or felony murder, they could convict Usher of first degree murder so long as each juror was convinced that defendant was guilty of some form of first degree murder. (RT 432–33).

The jury found Usher guilty of first degree murder and possession of a firearm by a convicted felon, but not guilty of the charge that he personally used a handgun in the commission of the murder. (Abstract of Judgment, Amended Petition at 14). Usher was sentenced to prison for 25 years to life.

### III.

Petitioner challenges his conviction on the ground that the charging information did not provide him with notice of the felony murder theory. Petitioner argues that the information therefore violated the sixth amendment of the United States constitution. Usher asserts this lack of notice, notwithstanding the fact that under California law a defendant may be convicted of felony murder even though the underlying felony has been dismissed. *Uhlemann*, 9 Cal.3d at 666, 108 Cal.Rptr. at 659, 511 P.2d at 611.

California state courts use a "short form" of criminal charging, as prescribed by California Penal Code sections 951 and 952. Usher's murder charge conformed to those statutes and stated in full:

The District Attorney of the County of Alameda hereby accuses NATHANIEL ELISHA USHER of a felony, to wit, Murder, a violation of Section 187 of the Penal Code of California, in that on or about the 16th day of October, 1979, in the County of Alameda, State of California, said defendant did then and there murder RAYMOND JOHN PRUDHOMME, a human being.

Information, Amended Petition at 13.

California Penal Code § 187 defines murder as "the unlawful killing of a human being ... with malice aforethought." The degree of murder is then defined by California Penal Code § 189. First degree murder includes a killing which is "willful, deliberate, and premeditated," or which is committed in the perpetration, or attempt to perpetrate, certain felonies, including robbery.

The California Supreme Court has repeatedly held that an accusatory pleading charging murder in the above-quoted form, without specifying the degree of murder, adequately apprises the accused of the first degree murder charge. *In re Walker*, 10 Cal.3d 764, 781, 112 Cal.Rptr. 177, 188, 518 P.2d 1129, 1140 (1974). Specifically,

[I]t has long been settled that under such a charge the accused may be convicted of first degree murder on the theory that the murder was committed in the perpetration of one of the felonies specified in Penal Code section 189 (citation omitted).

*Id.; accord People v. Murtishaw*, 29 Cal.3d 733, 751 n. 11, 175 Cal.Rptr. 738, 747 n. 11, 631 P.2d 446, 455 n. 11 (1981). This rule dates back to at least 1915. *People v. Witt*, 170 Cal. 104, 107–08, 148 P. 928, 929 (1915) (murder defined by reference to § 187 includes murder in the first degree, and it was proper to instruct the jury on felony murder); *see People v. Watkins*, 195 Cal.App.3d 258, 266, 240 Cal.Rptr. 626, 630 (1987).

However, the California Supreme Court has also held that § 189 is a degree-fixing device, as well as the codification of the felony murder rule. *People v. Dillon*, 34 Cal.3d 441, 465, 194 Cal.Rptr. 390, 403, 668 P.2d 697, 710 (1983). The elements of premeditated murder and felony murder are distinct. Although malice is an element of premeditated murder, it is not an element of felony murder and the prosecution need only prove the specific intent to commit the particular felony. *Dillon*, 34 Cal.3d at 475, 194 Cal.Rptr. at 411, 668 P.2d at 717–18 (quoting *People v. Cantrell*, 8 Cal.3d 672, 688, 105 Cal.Rptr. 792, 802–03, 504 P.2d 1256, 1266–67 (1973)). *Dillon* raises the question of whether felony murder and premeditated murder are separate offenses and should be charged separately,

or whether felony murder is necessarily included in the charge of premeditated murder.[2]

However, the California Supreme Court implicitly answered this question in holding that in a prosecution for first degree murder it is not necessary that all jurors agree on one or more of the several theories presented by the prosecution. It is sufficient that each juror is convinced that the defendant is guilty of some form of first degree murder as defined by § 189. *People v. Guerra*, 40 Cal.3d 377, 386, 220 Cal.Rptr. 374, 379, 708 P.2d 1252, 1257 (1985) (quoting *People v. Milan*, 9 Cal.3d 185, 195, 107 Cal.Rptr. 68, 74, 507 P.2d 956, 962 (1973)).

The United States Supreme Court recently discussed the question of whether first degree murder and felony murder must be charged as separate offenses. The Court held that a general verdict of first degree murder, without specifying the theory for the conviction, did not violate the federal constitution. *Schad v. Arizona*, — U.S. —, 111 S.Ct. 2491, 115 L.Ed.2d 555, 59 U.S.L.W. 4762 (1991). In *Schad* a state jury convicted petitioner of first degree murder after he was found with the murder victim's vehicle and other possessions. The prosecutor argued for a first degree murder conviction on the theories of both premeditated and felony murder. The jury convicted Schad of first degree murder. The issue before the Court was the constitutionality of not requiring the jury to agree on a single theory of first degree murder. The Supreme Court held that the jury need not agree on only one of the alternative statutory theories of murder. The Court upheld the authority of the state court to determine that "certain statutory alternatives are mere means of committing a single offense, rather than independent elements of the crime...." *Schad*, — U.S. at —, 111 S.Ct. at 2499 (plurality opinion).

While recognizing that the due process clause places limits on when alternative theories can constitutionally comprise a single offense, the Court did not define when each theory represents a separate offense which must be separately charged. However, the Court found that Arizona's equation of the mental state for premeditated murder with the mental state for felony murder was reasonable. *Id.* at —, 111 S.Ct. at 2502–03. Therefore a separate verdict form specifying the felony murder theory was not necessary.

■ The California Supreme Court has decided that a jury may convict for first degree murder based on the alternative grounds. *Guerra*, 40 Cal.3d at 386, 220 Cal.Rptr. at 379, 708 P.2d at 1257. The *Schad* decision resolves any federal concerns raised by the apparent contradiction in California law between the holding in *Walker* and the *Dillon* court's discussion of the separate elements of premeditated and felony murder. Since the state could convict Usher of felony murder with the underlying charge of robbery even after the robbery count had been dismissed, the jury could convict Usher on first degree murder based on either a finding of premeditation or that the murder was committed in the course of a robbery. Thus, under either California or federal law, petitioner cannot demonstrate that he was convicted of an uncharged crime.

## IV.

The petition nonetheless raises an issue of petitioner's sixth amendment rights, because it presents the question of whether petitioner received sufficient notice that the state sought a conviction on the theory of felony murder. Petitioner argues that the robbery charge was dismissed before trial, that the information charged him with first degree murder under § 187, but did not mention § 189, which defines the various types of first degree murder, and that Ush-

---

**2.** *See In re Hess*, 45 Cal.2d 171, 173, 288 P.2d 5, 7 (1955) in which Justice Traynor stated:
   A person cannot be convicted of an offense (other than a necessarily included offense) not charged against him by indictment or information, whether or not there was evidence at his trial to show that he had committed that offense. (citation omitted).

er was therefore not given sufficient notice of the charge of felony murder.

### A.

Usher's claim may be construed as a sixth amendment or fourteenth amendment due process claim. The sixth amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be informed of the nature and cause of the accusation...." [3] This guarantee is applied to the states through the due process clause of the fourteenth amendment. *In re Oliver*, 333 U.S. 257, 273–74, 68 S.Ct. 499, 507–08, 92 L.Ed. 682 (1948); *See also Gray v. Raines*, 662 F.2d 569, 571 (9th Cir.1981).

Due process entitles an accused to know the charges against which he must defend in order to have a reasonable opportunity to prepare and present a defense and not be taken by surprise at trial. *Oliver*, 333 U.S. at 273, 68 S.Ct. at 507; *Cole v. Arkansas*, 333 U.S. 196, 201, 68 S.Ct. 514, 517, 92 L.Ed. 644 (1948). This requirement also enables the defendant to plead double jeopardy against a second prosecution. *U.S. v. Rojo*, 727 F.2d 1415, 1418 (9th Cir.1983) (citation omitted).

To determine whether Usher received fair notice of the felony murder charge, this court must first look at the information filed against him. *Lincoln v. Sunn*, 807 F.2d 805, 812 (9th Cir.1987). A critical consideration is whether the introduction of the felony murder theory changed the offense charged. *Id.* at 813 (citations omitted).

### B.

Petitioner relies principally on two cases: (1) *Givens v. Housewright*, 786 F.2d 1378 (9th Cir.1986), and (2) *Sheppard v. Rees*, 909 F.2d 1234 (9th Cir.1989).[4]

In *Givens*, the defendant was charged with first degree murder under a Nevada statutory scheme similar to California's. Next to its caption, the information cited two criminal statutes which defined murder and its two degrees. The evidence at trial indicated that Givens had beaten the victim with his fists and a crutch. At the close of the evidence, the trial court instructed the jury on both premeditated murder and murder by torture. The Ninth Circuit concluded that the information was "constitutionally inadequate," holding that the mere citation to a statute which defined the degrees of murder did not provide proper notice to enable the defendant to prepare a defense to the charge of murder by torture. Because the elements of premeditated murder were distinct from the elements of murder by torture, defendant was not able to present an adequate defense without knowing in advance under which theory the state sought conviction. The court found that this error was not harmless beyond a reasonable doubt.

The *Sheppard* case, 909 F.2d 1234 (9th Cir.1989), is factually similar to the case at bar. Sheppard was charged with one count of murder under § 187. The case was tried on the theory that the killing was premeditated, to collect an alleged debt that Sheppard felt the victim owed him. After both sides rested and submitted their requested jury instructions, the prosecution sought a felony murder instruction based on the felony of robbery. This was the first time that the prosecution had raised the issue of felony murder. Defense counsel objected that there was no substantial evidence to support a felony murder theory and that the state had not charged defendant with robbery. The trial judge nevertheless gave the instruction and the prosecution argued for a felony murder conviction during closing argument. The jury convicted Shep-

---

3. U.S. Const. amend. VI.

4. Petitioner cites *Watson v. Jago*, 558 F.2d 330 (6th Cir.1977) which found defendant's due process rights had been violated by a constructive amendment of the grand jury indictment. The prosecution presented evidence to prove felony murder although the indictment charged first degree murder. However, under Ohio law pre-

meditated and felony murder were two separate offenses, despite their inclusion in the then existing first degree murder statute. In light of *Schad v. Arizona*, —— U.S. ——, 111 S.Ct. 2491, 115 L.Ed.2d 555 (1991), the distinction between the Ohio statutory scheme in *Jago* and California's is critical and renders the case inapposite.

pard of first degree murder, without indicating whether it was on the theory of premeditated or felony murder.

Sheppard petitioned the United States District Court for a writ of habeas corpus, which was denied. On appeal, Sheppard argued that he did not receive adequate notice of the felony murder charge because the information did not specify felony murder or the robbery charge. The Ninth Circuit rejected the state's argument that the general charge of murder in the information sufficiently appraised Sheppard that he might have to defend against both felony murder and premeditated murder. *Sheppard*, 909 F.2d at 1236.

On rehearing before the circuit, the state changed its position and conceded that under the facts, Sheppard *"was* denied adequate notice and opportunity to prepare to defend against a charge of felony-murder." *Id.* at 1236 (emphasis in original). That concession changed the issue before the circuit. The issue on rehearing was no longer whether the pleading furnished adequate notice, but whether the lack of adequate notice was harmless error. Amending its prior opinion, the Ninth Circuit held that the state's concession removed the sixth amendment issue from consideration and "rendered our previous analysis of it moot." *Id.* at 1237. The circuit court then considered whether the then-admitted error was harmless, and concluded that it was not. The *Sheppard* case stands for the proposition that a sixth amendment notice violation is not subject to harmless error analysis. *Id.* at 1238 n. 3.

## C.

But that does not control the analysis in this case. The question here is whether Usher had adequate notice of the felony murder accusation. This court may conclude from the first opinion and the state's concession in *Sheppard*, that the charging information against Usher did not itself provide Usher with adequate notice of a felony murder theory. However, the *Sheppard* court also stated that adequate notice of the charge could come from sources other than the information alone:

[F]or example, a complaint, an arrest warrant, or a bill of particulars. (citation omitted). Similarly, it is possible that an accused could become apprised of the particular charges during the course of a preliminary hearing. Any or all of these sources—or perhaps others—might provide notice sufficient to meet the requirements of due process, although precise formal notice is certainly the most reliable way to comply with the Sixth Amendment.

*Sheppard*, 909 F.2d at 1236 n. 2.

Therefore in applying *Sheppard* to the present case, the question is whether Usher was otherwise adequately appraised of the felony murder theory and had the opportunity to prepare an effective defense to it.

Unlike *Sheppard*, the felony murder theory in this case was introduced at the beginning of the trial. During the jury voire dire, the trial court explained the felony murder rule to the potential jurors and used the hypothetical example of robbery as the underlying offense. The prosecution asked each juror whether he or she understood and could apply the felony murder rule (RT 27–28, 35, 41, 44, 46, 73, 82, 87, 98–99, 146). In addition, during his opening statement the prosecutor told the jury that he would prove that Usher planned the murder in order to accomplish a robbery, and he discussed that anticipated evidence. Defense counsel responded by asserting that the evidence would show that Usher was incapable of planning a murder, "let alone a robbery." (RT 209). At the end of the evidence, the prosecution and defense also agreed upon jury instructions that included an instruction on the felony murder theory.

The *Sheppard* court was concerned with the surprise that the defendant faced by being presented with the felony murder theory only after jury instructions had been submitted. That concern is not nearly as salient here, where the record demonstrates that Usher was aware from the outset of the trial that the jury would consider a felony murder theory and defendant raised no objections. In other cases which

have addressed the notice requirement, *see, e.g., Housewright,* 786 F.2d 1378 (9th Cir. 1986); *Gray v. Raines,* 662 F.2d 569 (9th Cir.1981) (Tang, J., specially concurring), the defendants were presented with new theories or charges near the close of trial. Those cases did not specifically address the question of whether a defendant may be given adequate notice earlier in the course of the trial.

The question here is whether the references to felony murder and to the crime of robbery were sufficiently early in the trial to provide petitioner with adequate notice that the state planned to use a felony murder theory, and to enable Usher to prepare an effective defense. This court concludes from the above record that defendant did receive adequate and timely notice. As stated and as set forth in the record: On the first day trial, the felony murder theory was discussed with the potential jurors. The opening statements discussed the felony murder theory. The trial then proceeded for four days. The prosecution and the defense agreed upon a felony murder instruction. Usher therefore knew, from the first day of trial until the moment of jury instructions, that felony murder was one of the state's theories which would be submitted to the jury. If the defense believed that Usher was not adequately prepared for trial on the felony murder theory, he could have raised that objection on the opening day of trial. And if Usher believed that he had not had an adequate opportunity to present his defense to felony murder, he would not have agreed upon jury instructions which included the felony murder instruction. This court therefore concludes that Usher received constitutionally adequate notice of the felony murder theory.

IT IS THEREFORE ORDERED that the petition for a writ of habeas corpus is denied.

IT IS SO ORDERED.