Filed 4/17/14  P. v. Watson CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E059628 |
| v. | (Super.Ct.No. FWV1300918) |
| AARON BRANDON WATSON, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Jon D. Ferguson, Judge.  Affirmed.

Gerald J. Miller, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

Defendant and appellant Aaron Brandon Watson appeals after he pleaded no contest to one felony count of possession of a controlled substance (methamphetamine), and one count of maintaining a place for using drugs.  Defendant had elected to plead no

1

contest to these counts, with an agreement to dismiss the remaining counts (felony possession of marijuana for sale and misdemeanor possession of a drug smoking pipe), after his motion to suppress evidence was denied.  We affirm the judgment.

FACTS AND PROCEDURAL HISTORY

The case arose out of an incident in which a hotel manager called police for assistance in removing a guest (defendant) who refused to leave.  Defendant had paid for one night's stay at the hotel.  Check-out time was 12:00 noon.  Defendant came to the hotel manager's attention because other hotel guests, as well as hotel cleaning staff, complained of a very strong odor of marijuana coming from defendant's room.  The manager told defendant that he was not allowed to smoke in the room, and that smoking marijuana was illegal.  The manager informed defendant that he would have to leave by check-out time.  Defendant made excuses and asked for extensions of time, saying he had nowhere to go or that he was waiting for someone to come pick him up, but in essence he refused to leave.

By 1:00 p.m., after defendant had been called several times and still refused to leave, the hotel manager decided to call police.  The officers responded, and proceeded to defendant's room.  The officers knocked on the door and announced themselves. Defendant initially opened the door, saw the officers, and then tried to shut the door again.  One of the officers blocked the door with his foot. The officer asked defendant whether defendant "had anything illegal on him."  Defendant denied having anything

2

illegal. The officer persisted, asking if he could check whether defendant possessed anything illegal. Defendant responded by turning around and raising his hands.

The officers then entered the room and began by searching defendant. The personal search turned up a drug smoking pipe in one pocket, and a baggie with methamphetamine residue in another. Defendant was then handcuffed and seated on a chair in the room. The search expanded to other items in the hotel room. Defendant's backpack, found on the bed, contained a plastic jar, a glass bottle, and a large plastic baggie, all containing marijuana. The backpack also contained several empty plastic baggies, and a white envelope with $900 cash. Defendant's cell phone was on the bedside table. Defendant gave the password on request, and officers found several text messages offering to sell "herb," i.e., marijuana.

Defendant was charged with one felony count of possession of marijuana for sale, one felony count of possession of methamphetamine, and a misdemeanor count of possession of a drug smoking pipe.

Defendant filed a motion to suppress evidence pursuant to Penal Code section 1538.5. Defendant argued that he had been searched without a warrant, and that it was therefore the People's burden to justify the search and the seizure of the evidence. The trial court denied the motion.

After the trial court denied his motion to suppress evidence, defendant negotiated a very favorable plea bargain. Defendant would not have to plead to the charge of possession of marijuana for sale, but only to the charge of possession of

methamphetamine.  The sale of marijuana and the possession of a drug pipe charges would be dismissed.  A fourth count—maintaining a place for the use of drugs in violation of Health and Safety Code section 11366—was added, with the purpose of ensuring that any sentence on the admitted charges would have to be served in state prison rather than in local custody.  Defendant would admit that charge.  However, defendant would not have to serve any time in prison.  Defendant would be released from custody on a *Vargas* waiver (*People v. Vargas* (1990) 223 Cal.App.3d 1107) and, on his return, his state prison sentence of five years eight months would be vacated and he would be admitted to probation.  In addition, defendant's cell phone (minus its memory card), the $900 cash, his laptop computer, a pair of headphones, and a Swiss Army knife would all be returned to him.

After a great deal of back-and-forth discussion, defendant eventually agreed to the plea bargain on these terms.  He also admitted two prison term prior convictions. Defendant did violate the terms of his *Vargas* release, but the result was only a minor change in the outcome:  rather than having the state prison sentence vacated and defendant sentenced to probation, the state prison sentence was suspended, and defendant was placed on probation, subject to the suspended prison sentence.

On September 6, 2013, defendant filed a notice of appeal, asserting grounds related to sentencing or other matters occurring after the plea, which did not affect the validity of the plea, and to denial of his motion to suppress evidence.[1]

## ANALYSIS

### I. Appellate Counsel's Brief

On defendant's request, this court appointed counsel to represent him on appeal. Counsel has filed a brief under the authority of *People v. Wende* (1979) 25 Cal.3d 436 and *Anders v. California* (1967) 386 U.S. 738 [87 S.Ct. 1396, 18 L.Ed.2d 493], setting forth a statement of the case, but raising no specific issues. Counsel has requested this court to undertake a review of the entire record.

### II. Defendant's Personal Supplemental Brief

Defendant was informed of his right to file a personal supplemental brief, raising any issues he felt should be brought to the attention of the court. Defendant has filed a personal supplemental brief, in which he advances numerous claims of impropriety.

As clearly as we can understand defendant's claims, he argues:

1) His conviction resulted from a conspiracy, consisting of vindictive prosecution and "outrageous government conduct."

2) The case was infected with police misconduct, prosecutorial misconduct, misconduct of defense counsel, and judicial misconduct, "including a collusion that

---

[1] Among other rights defendant waived pursuant to the *Vargas* waiver was the right to appeal, including the right to appeal on the motion to suppress evidence.

resulted in the appellant's deprivation of right[]s" under the Civil Rights Act (Title 42 U.S.C.A., § 1983) and under the Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments of the United States Constitution.

3)  The plea was not valid because "it was a fraudulently induced plea taken under duress with no factual basis."

4)  The prior prison term enhancements should be "void, due to one conviction . . . being made with *fraud on the court* . . . and the other enhancement prior being more than five years old."  With respect to his admissions of the prison term priors, defendant contends "the court reporter[']s transcripts are erred, with *fraud on the inducement* of the plea bargain with willful misconduct by the court, officers, and it[]s agents and misleading the appellant," such that there was "*fraud upon the court* and there to having an illegal sentence from the coerced plea taken [*sic*]."

5)  Defendant urged a *Brady* violation (*Brady v. Maryland* (1963) 373 U.S. 83, 87 [83 S.Ct. 1194, 10 L.Ed.2d 215]), on the theory that evidence affecting defendant's sentence was not disclosed by the prosecution.  He reiterates the contention that "[t]here is fabricated evidence amounting to false evidence and concealing of exculpatory evidence," in that "[t]he evidence [was] gathered improperly and was tainted and contaminated [because it was] scraped with a paper clip that [D]eputy Paredes testified to in the preliminary hearing . . . ."

6)  Defendant contends that meritorious defense motions were not filed, amounting to a deprivation of his Sixth Amendment right to counsel (ineffective

assistance of counsel, or IAC). Among the motions defendant wanted filed were a *Pitchess* motion (*Pitchess v. Superior Court* (1974) 11 Cal.3d 531 (*Pitchess*) [concerning records of police misconduct]), a *Murgia* motion (*Murgia v. Municipal Court for Bakersfield Judicial Dist.* (1975) 15 Cal.3d 286 (*Murgia*) [concerning dismissal for selective prosecution for improper purposes]), a motion for reconsideration, and a petition for writ of mandate to reconsider or review defendant's motion to suppress evidence based on the warrantless search and seizure of the evidence.

7) Specifically with respect to the alleged unlawful search and seizure, defendant asserts that the items seized are "Fruit of the Poisonous Tree" and obtained by illegal means, which he describes as "Noble Cause Corruption."

8) Defendant includes, as a catch-all claim, the assertion that "There are errors of law and errors of fact in this case that [led] to violations to the appellant's 5th Amendment's due process of law protections, double jeopardy clause protection, and the right against self-incrimination, 8th Amendment prohibiting cruel and unusual punishment including excessive misappropriate sentence, and the U.S. Supremacy Clause Article 6, Section 2 of the U.S. Constitution."

III. <u>Defendant's Claims Are Vague, Unsubstantiated, and Without Merit, and After Examination of the Entire Record, No Error Appears</u>

Defendant's many claims of error are patently without merit. Defendant has some familiarity with legal terminology, but he cannot tie any of his supposed claims to any facts, nor is he able to articulate an argument in any relevant sense.

The sole issue as to which any articulable claim could be made is the propriety of the trial court's denial of defendant's motion to suppress evidence. Notably, as part of his plea bargain, defendant waived the right to appeal the denial of his motion to suppress. However, even if the merits could be considered, the trial court properly denied the motion to suppress evidence.

At the time the officers were called in, defendant retained no reasonable expectation of privacy because his tenancy had expired. (See *People v. Van Eyk* (1961) 56 Cal.2d 471, 478 [where a defendant's tenancy could be found to have expired before the search was made, the manager of the hotel was entitled to permit the police to enter and search the room].) In addition, substantial evidence supports the trial court's finding, in denying the motion, that defendant consented to the initial personal search. (See *People v. Glaser* (1995) 11 Cal.4th 354, 362 [in reviewing a trial court's ruling on a motion to suppress evidence, an appellate court defers to the trial court's express or implied findings of fact that are supported by substantial evidence]; *People v. Leyba* (1981) 29 Cal.3d 591, 596-597 [on review of a motion to suppress evidence, the factual findings of the trial court are upheld if supported by substantial evidence].) The consensual search led to the discovery of the methamphetamine pipe and the baggie containing methamphetamine residue. These discoveries provided probable cause for defendant's arrest.

The search of the backpack was not a search incident to arrest, but defendant had been arrested and presumably was soon to be taken away for booking. He had no

reasonable expectation of privacy remaining as to the hotel room and, if his property were left behind, it would be considered abandoned. When someone leaves a hotel room after the tenancy has expired, and leaves property behind, he or she retains no reasonable expectation of privacy in what is essentially abandoned property. (See *People v. Parson* (2008) 44 Cal.4th 332, 345-348 [the defendant did not pay for another night's lodging and left a motel room by removing a screen from a window; this evidence was sufficient to support a finding that the defendant abandoned the room and had no reasonable expectation of privacy].)

Even if the property in the hotel room were not subject to the landlord's taking possession after abandonment, the perceptible odor of marijuana, sufficient to emanate from the room even through a closed door and into the hallway, gave the officers probable cause to believe that additional contraband—marijuana—not discovered during the personal search, was located within the room. At the same time that defendant was being taken into custody, his belongings would need to be gathered and inventoried, presuming that he did not intend to abandon them. Under either scenario, abandonment or inventory of defendant's property at booking, the evidence would inevitably have been discovered.

"Under the inevitable discovery doctrine, illegally seized evidence may be used where it would have been discovered by the police through lawful means. As the United States Supreme Court has explained, the doctrine 'is in reality an extrapolation from the independent source doctrine: Since the tainted evidence would be admissible if in fact

9

discovered through an independent source, it should be admissible if it inevitably would have been discovered.'" (*People v. Robles* (2000) 23 Cal.4th 789, 800-801.) To establish inevitable discovery, the prosecution "must demonstrate by a preponderance of the evidence that, due to a separate line of investigation, application of routine police procedures, or some other circumstance, the [challenged evidence] would have been discovered by lawful means." (*People v. Hughston* (2008) 168 Cal.App.4th 1062, 1072.)

The trial court also found that the search of the mobile phone was consensual. The finding was supported by substantial evidence: one of the officers had asked defendant if the phone was his. Defendant admitted that it was. The officer then asked for the password to the phone, and defendant immediately supplied the password.

Under all the circumstances, the searches of the backpack and the mobile phone were reasonable. The trial court properly denied defendant's motion to suppress the evidence found in the search.

As to defendant's remaining claims of error, however, he fails to make any reasoned argument, or to offer any facts to support his various claims.

There was no "vindictive prosecution," as there was no increase of charges or greater aggregate sentence imposed as a result of defendant's exercise of any of his rights. His ultimate sentence was modified slightly: instead of the prison sentence being vacated and defendant being admitted to probation in the first instance, the state prison term was suspended and defendant was placed on probation while remaining subject to ultimate imposition of the stayed prison sentence. This alteration resulted from

defendant's violation of his *Vargas* release, and not from any lawful conduct or exercise of rights on defendant's part. Defendant does not articulate any other basis for an alleged "vindictive prosecution," and we find none.

Defendant can point to no outrageous government conduct to support his generic claims of conspiracy. He offers nothing to suggest of what the alleged outrageous government conduct supposedly consisted. In the absence of any facts—and none are suggested by the record—or articulable argument, we find the contention to be without merit.

There is also nothing to support his claims that his case was infected with police misconduct, prosecutorial misconduct, misconduct of defense counsel or judicial misconduct. There was no misconduct by any of the persons defendant accuses, and certainly no collusion among them. The record belies any such claim.

Defendant argues that his plea was invalid, because "it was a fraudulently induced plea taken under duress with no factual basis." Defendant does not describe any manner in which the plea was fraudulently induced. Rather, the record is replete with the court's efforts to ensure that defendant fully understood his rights and the consequences of his pleas, and that defendant knowingly, willingly, and voluntarily agreed to the pleas. Moreover, the preliminary hearing transcript, to which both parties stipulated, provided a fully adequate factual basis for the pleas. No duress whatsoever was applied to defendant to induce him to enter the no contest pleas; the court at several points was ready to abort the plea proceedings entirely, based on defendant's seeming reluctance, but ultimately

11

took the pleas based on defendant's repeated assurances that he did, indeed, personally wish to enter them.

The prison term prior enhancements were proper. One enhancement was over five years old, but the question is not whether it has been five years since the prior conviction; the issue is whether defendant remained free both of another felony conviction and of prison custody for five years after that conviction. (*People v. Elmore* (1990) 225 Cal.App.3d 953, 957 ["washout" period does not apply if defendant committed a new offense resulting in a felony conviction within five years even without a showing he was incarcerated in state prison as a result thereof].) Defendant failed to meet these criteria. As to defendant's 2012 stalking conviction, the record shows only that defendant was momentarily confused as to which prior he was being asked to admit. Even though defendant asserted that the conviction was being reviewed on appeal, that conviction remained valid unless and until it is reversed. Defendant made no showing that his stalking conviction has been reversed, vacated, or otherwise rendered invalid.

Defendant asserts that the reporter's transcript of the taking of his admissions of the prison term prior enhancements is somehow erroneous, but he fails to identify any mistake, mistranscription, or other irregularity beyond his bald assertion of the claim. He claims there was fraud in the inducement with respect to the enhancements, but he fails to state or indicate in any manner what misrepresentation was made to him in order to induce him to admit the prison term priors. Instead, the record shows that the court carefully inquired of defendant whether he wished to admit the priors, and the court

12

corrected defendant's misunderstanding of which prior he was being asked to admit. In addition, defendant stated plainly in open court that he had not been threatened or coerced in any way to get him to change his pleas.

Defendant claims a *Brady* violation (*Brady v. Maryland*, *supra*, 373 U.S. 83, 87 [83 S.Ct. 1194, 10 L.Ed.2d 215]) occurred, i.e., that evidence affecting defendant's sentence was not disclosed by the prosecution. Defendant does not suggest what such evidence might be, however.

Defendant next complains that he was deprived of his constitutional right to counsel because a number of meritorious defense motions were not made below. The contention is without merit.

There was no reason for defense counsel to file a motion to reconsider as to the suppression ruling, because the motion to suppress was properly denied. Defendant wanted defense counsel to file a *Pitchess* motion.[2] Defendant suggests no good cause to support any potential *Pitchess* motion.

Similarly, although defendant wanted to file a *Murgia* motion, concerning selective enforcement, defendant suggests nothing that could have been proffered in support of a claim of discriminatory prosecution.

As noted, defendant concludes his scattershot assertions of error with a catch-all series of claims that, "There are errors of law and errors of fact in this case that [led] to

---

[2] *Pitchess*, *supra*, 11 Cal.3d 531.

13

violations to the appellant's 5th Amendment's due process of law protections, double jeopardy clause protection, and the right against self-incrimination, 8th Amendment prohibiting cruel and unusual punishment including excessive misappropriate sentence, and the U.S. Supremacy Clause Article 6, Section 2 of the U.S. Constitution."

As usual, defendant's claims are remarkably slim on any specifics to identify an issue that is even capable of review. Defendant can point to no errors of law, and no errors of fact. He patently does not know what "double jeopardy" means. By pleading no contest and admitting the enhancements, defendant waived his due process and self-incrimination rights. The only right that defendant specifically complained about below was the right to a speedy trial. Defendant had waived that right and agreed to extend the time for trial to begin. He maintained below that he was somehow tricked or coerced into waiving this right, but he never suggested how this was accomplished. Defendant's sentence to three years eight months imprisonment for two admitted offenses, plus two years for prison term priors, was neither cruel nor unusual. Defendant's own misconduct while he was on a *Vargas* release resulted in modification of the agreement to impose and suspend this state prison sentence, rather than vacating the prison sentence. In either case—vacated prison sentence or suspended prison sentence—defendant was placed on supervised probation. The resulting punishment was extremely lenient, considering defendant's recidivist record.

IV.   <u>An Examination of the Entire Record Discloses No Arguable Issues</u>

Pursuant to the mandate of *People v. Kelly* (2006) 40 Cal.4th 106, we have conducted an independent review of the record and find no arguable issues.

<u>DISPOSITION</u>

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

<u>McKINSTER</u>
J.

We concur:

<u>RAMIREZ</u>
P. J.

<u>HOLLENHORST</u>
J.

15