[Crim. No. 21738. Nov. 18, 1985.]

THE PEOPLE, Plaintiff and Respondent, v.
DANNY MONTANA GUERRA, Defendant and Appellant.

[Crim. No. 22750. Nov. 18, 1985.]

In re DANNY MONTANA GUERRA on Habeas Corpus.

[redacted]

**COUNSEL**

Christopher J. Schatz, under appointment by the Supreme Court, for Defendant and Appellant and Petitioner.

George Deukmejian and John K. Van de Kamp, Attorneys General, Robert H. Philibosian and Steve White, Chief Assistant Attorneys General, Daniel J. Kremer, Assistant Attorney General, Michael D. Wellington, John W. Carney, Keith I. Motley, Jay M. Bloom and Lillian Lim Quon, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**MOSK, J.**—This is an automatic appeal (Pen. Code, § 1239, subd. (b)) from a judgment of death under the 1978 death penalty law (*id.*, § 190.1 et

seq.). We conclude that the judgment must be affirmed as to guilt (except on the attempted murder count) but that the special circumstance findings must be set aside under compulsion of *Carlos* v. *Superior Court* (1983) 35 Cal.3d 131 [197 Cal.Rptr. 79, 672 P.2d 862], and *People* v. *Garcia* (1984) 36 Cal.3d 539 [205 Cal.Rptr. 265, 684 P.2d 826].

The facts necessary to decide this appeal are undisputed. Warren Birks and Ruben Mesa were employed as guards by a private security firm, and were working the 2 p.m. to 10 p.m. shift at a store in San Bernardino. About 8 p.m. Birks was stationed in his automobile at one side of the store and Mesa was deployed in his at the other. Birks had in his possession two handguns that had been assigned to the guards who patrolled the store. The weapons had trigger locks on them, however, and were inoperable; the guards on the so-called graveyard shift, who were to receive the guns, had the keys.

Defendant was employed by the same security firm and was scheduled to work the graveyard shift at the store that night. He approached Birks and asked who and where his partner was. After Birks told him, defendant left and later returned driving Mesa's automobile with Mesa locked in the trunk. Defendant asked Birks to hand over the guns and sit on the floor of the front passenger seat of Mesa's car; seeing defendant wearing rubber gloves and armed with a sawed-off shotgun, Birks complied. Defendant drove some distance, stopped at a house, called out to Teyo Quesada, and followed Quesada after the latter set off in his van. Soon Quesada stopped; defendant drove past and also came to a stop. He opened the trunk and ordered Mesa to get out and sit in the front passenger seat. Defendant positioned himself a few feet away from Mesa and Birks across the front seat. He assured the pair he was not going to hurt them, but the shotgun then discharged twice without warning. Birks began to struggle with defendant. Defendant called to Quesada for help, but Birks advised him he would be an accessory to murder and Quesada drove off in his van. After a bloody fight Birks managed to escape and defendant fled. Mesa was dead.

Defendant was charged with the murder of Mesa (Pen. Code, § 187), the attempted murder of Birks (*id.*, §§ 187, 664), the robbery of Birks (*id.*, § 211), and in separate counts the kidnaping of Mesa and of Birks (*id.*, § 207). With respect to the murder count, two special circumstances were alleged: (1) felony-murder robbery (*id.*, § 190.2, subd. (a)(17)(i)), and (2) felony-murder kidnaping (*id.*, subd. (a)(17)(ii)).

At trial the prosecution's theory was that defendant killed Mesa in an unsuccessful attempt to commit "the perfect crime" or at the very least in the course of a felony. The defense theory, presented through the testimony

of defendant himself, was altogether different: defendant had assertedly been dissatisfied with the security at the store and had complained about it to his superiors to no avail; he conceived a plan to disarm his fellow guards to show his superiors how poor security was, and enlisted the aid of Quesada; he carried the sawed-off shotgun in case a display of superior force was needed to disarm the guards, and wore rubber gloves because he knew it was illegal to possess such a weapon and did not want it traced to him after he had disposed of it; he did not intend to take the handguns for the purpose of preventing resistance, since he knew they were inoperable; nor did he intend to take them to permanently deprive the security force of them, because if that had been his intent he would simply have waited until he was given the guns on beginning his shift later that night; he did not intend to kill either victim; rather, the shotgun discharged accidentally, once as he attempted to move out of Mesa's automobile and again as he struggled with Mesa and Birks on the front seat.

The jury found defendant guilty as charged and found both special circumstance allegations to be true. In the penalty phase the jury imposed the death sentence.

Defendant raises a number of contentions bearing on the guilt phase. With the exception of his attack on the conviction of attempted murder, none has merit.

He contends the court erred by failing to conduct a full evidentiary hearing on his mental competence pursuant to Penal Code section 1369, even though his counsel, with his agreement, submitted the issue on the basis of psychiatric and psychological reports. Specifically he argues that even if a full evidentiary hearing may generally be waived and the issue submitted on reports alone, that may not be done when substantial evidence of incompetence has been presented. We need not determine whether the contention is sound in the abstract; it fails because its factual premise herein is unsupported.

The record reveals that the court impliedly found there was no substantial evidence of incompetence. When counsel requested a full hearing on defendant's competence, the court evaluated the evidence already before it, including its own questioning of defendant and psychiatric and psychological reports prepared on the issue of sanity at the time of the offenses. The court concluded that the evidence raised no doubt about defendant's competence, and hence denied the request. Later the court changed its ruling and granted the request; it did so, however, not because evidence of incompetence was presented or because it conceived a doubt about defendant's competence, but solely because it concluded that a section 1368 hearing was

mandatory on counsel's request. The court subsequently ordered that defendant be examined by two psychiatrists and one psychologist. These experts agreed that defendant was competent to stand trial, and the court so ruled.

Our independent review of the record convinces us that no substantial evidence of defendant's incompetence was presented to the court. Defendant relies on a single sentence in a psychologist's report on the issue of his sanity at the time of the offenses. The psychologist declined to conclude whether defendant was sane or insane, on the ground that he did not have all the court records available for his review. He did state, however, that defendant's "state of mind indicates now, that he is not fully recovered of his sanity." By this statement he apparently meant that defendant was mentally ill or not totally sane at the time of trial. ■ But "[i]t is not enough that an expert state that the defendant is mentally ill or insane to satisfy the substantial evidence test. [Citation.] The expert must state with particularity that in his professional opinion the accused is, because of mental illness, incapable of understanding the purpose or nature of the criminal proceedings being taken against him or is incapable of assisting in his defense or cooperating with counsel." (*People* v. *Burney* (1981) 115 Cal.App.3d 497, 503 [171 Cal.Rptr. 329].) The psychologist here made no such statement; hence the substantial evidence test is not satisfied.

■ Defendant next contends the court erred by permitting him to withdraw a plea of not guilty by reason of insanity. He does not claim that he made his choice otherwise than freely and voluntarily and with adequate comprehension of the consequences. Rather he argues that the court was obligated, but failed, to satisfy the following three formal requirements: to advise him on the record that by withdrawing his insanity plea he was effectively waiving his rights to a jury trial, to confrontation, and against self-incrimination; to declare or establish at the time of withdrawal that he was mentally competent to stand trial; and to obtain defense counsel's express concurrence in the withdrawal of the plea.

Defendant had originally pleaded not guilty and not guilty by reason of insanity to the charges against him. After the appointed experts concluded he was sane at the time of the crimes and mentally competent to stand trial, and after the court determined he was competent, defendant sought to withdraw his insanity plea. The court asked whether he understood that if he withdrew his plea he could not introduce evidence on the issue or submit it to the jury, but would be conclusively presumed, for purposes of determining guilt, to have been sane when the crimes occurred. Defendant answered affirmatively. The court then permitted him to withdraw his plea.

Defendant relies on *Boykin* v. *Alabama* (1969) 395 U.S. 238 [23 L.Ed.2d 274, 89 S.Ct. 1709], and *In re Tahl* (1969) 1 Cal.3d 122 [81 Cal.Rptr. 577, 460 P.2d 449], for his contention that the trial court was required to expressly advise him on the record of his rights to confrontation, to a jury trial, and against self-incrimination before his withdrawal of an insanity plea could be deemed effective. The contention is unpersuasive.

First, he presents neither reason nor authority to support the proposition that the *Boykin-Tahl* requirements, which deal with the entering of guilty pleas, govern the withdrawal of his insanity plea on the facts of this case. *People* v. *Redmond* (1971) 16 Cal.App.3d 931 [94 Cal.Rptr. 543], on which he relies in urging that the accused must be aware or made aware of his *Boykin-Tahl* rights before he may be permitted to withdraw an insanity plea, is inapplicable here by its very terms. The *Redmond* court declared: "What we state in this opinion, of course, is not intended to apply to situations where there is no doubt of a defendant's sanity in the mind of the trial court and the reports of examining psychiatrists unanimously indicate that such defendant was sane at the time of the offense. Free withdrawal of the insanity plea under such circumstances should be permitted as it has been in the past." (*Id.* at p. 939.)

In any event, a prime purpose of the *Boykin-Tahl* requirements—to permit an accused "to take certain fundamental steps . . . [only if he is] made aware of their consequences and of the constitutional rights he is waiving by taking them" (*People* v. *Vanley* (1974) 41 Cal.App.3d 846, 857 [116 Cal.Rptr. 446])—was satisfied here. The court informed defendant that if he withdrew his insanity plea, his sanity at the time of the crimes charged would be conclusively presumed during the guilt phase and therefore he could not introduce evidence on the issue or submit it to the jury.

Next, for his point that the court must establish or declare the accused's competence to stand trial on the record at the time the insanity plea is withdrawn, defendant again unsuccessfully invokes the *Redmond* case. *Redmond* expressly stated, in language we have quoted above, that its analysis was not intended to apply when, as here, the court has no doubt about the defendant's competence to stand trial and expert testimony establishes he was sane at the time of the offense. (16 Cal.App.3d at p. 939.) In any event, such a requirement would evidently amount to little more than an empty formalism here: the court had recently determined that defendant was competent and nothing had transpired in the interim to undermine that determination.

Finally, defendant fails to offer either reason or authority to support his assertion that the court must obtain defense counsel's concurrence in the

withdrawal of an insanity plea on the facts before us. Be that as it may, the record clearly reveals counsel did concur, albeit not expressly, in defendant's withdrawal of his insanity plea.

Defendant next makes a number of contentions relating to the first degree felony-murder rule. First, he attacks the rule on grounds we held invalid in *People* v. *Dillon* (1983) 34 Cal.3d 441, 462-476 [194 Cal.Rptr. 390, 668 P.2d 697]. ■ Second, he contends the rule was inapplicable because the evidence was insufficient to support a finding that he intended to permanently deprive Birks of the handguns.

■ In reviewing the sufficiency of evidence, the question we ask is " 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (*People* v. *Johnson* (1980) 26 Cal.3d 557, 576 [162 Cal.Rptr. 431, 606 P.2d 738, 16 A.L.R.4th 1255], quoting *Jackson* v. *Virginia* (1979) 443 U.S. 307, 319 [61 L.Ed.2d 560, 573, 99 S.Ct. 2781], italics in original.) ■ The record establishes the following facts as undisputed: defendant, wearing rubber gloves, took the handguns from Birks at gunpoint; he tucked the guns into his waistband and kept them in his possession while driving to the place where Mesa was eventually killed; after the shooting, he and Birks struggled over one of the weapons; that gun was subsequently recovered at the site of the killing, the other at a house to which defendant fled. It is true that defendant testified he merely "confiscated" the guns to take them to his superiors and show how bad security was, and that he explained this intention to Birks; Birks, however, testified he never heard defendant express such an intent. Viewing the evidence in the light most favorable to the prosecution, we conclude that a rational trier of fact could have found that defendant intended to permanently deprive Birks of the guns, and hence that the evidence was sufficient to support the robbery conviction and application of the felony-murder rule.

■ Finally, defendant urges the court erred in defining robbery. The court instructed the jury that one of the elements of that crime was the "specific intent permanently to deprive [a] person of . . . property." In response to the jury's request for clarification, the court instructed the jury, with the concurrence of counsel, as follows: "Permanently to deprive . . . means to prevent the person from whom the property was taken from acquiring dominion over the property at any time in the future." Defendant asserts the clarifying instruction impermissibly withdrew the issue of intent from the jury's consideration, and invited the jury to decide it adversely to him if it merely found that his conduct *resulted* in preventing Birks from regaining dominion over the guns. The assertion misreads the record. What

the court clarified by the definition quoted above was not, as defendant implies, the phrase "*specific intent* permanently to deprive," but rather the phrase "permanently to deprive." The court thus did not withdraw the question of intent from the jury's consideration.

Defendant next contends the court erred by refusing to give an instruction requiring the jurors to agree unanimously on a single theory of first degree murder in order to return a first degree murder conviction. ■ It is settled, however, that "in a prosecution for first degree murder it is not necessary that all jurors agree on one or more of several theories proposed by the prosecution; it is sufficient that each juror is convinced beyond a reasonable doubt that the defendant is guilty of first degree murder as that offense is defined by the statute." (*People* v. *Milan* (1973) 9 Cal.3d 185, 195 [107 Cal.Rptr. 68, 507 P.2d 956].) Defendant provides no compelling reason or authority that would require us to depart from this rule, and we decline to do so.

As to the robbery count, defendant contends the evidence is insufficient to support his conviction. For the reasons given in concluding that the felony-murder rule was applicable to this case, we reject the argument as without merit.

■ As to the attempted murder count, however, defendant's contention that the court committed reversible instructional error is meritorious. "Instructing the jury on the . . . offense, the court stated that '[a]n attempt to commit a crime consists of two elements[:] [n]amely, a specific intent to commit the crime and a direct but ineffectual act [done] toward[] its commission.' It then instructed the jury that it could find defendant guilty of murder on any of three theories: express malice, implied malice, or felony murder. The court neglected, however, to inform the jury that the crime of attempted murder requires a specific intent to kill, a mental state coincident with express malice but not necessarily with implied malice or felony murder. The jury instructions thus implied that the jury should find [defendant] guilty of attempted murder if it determined that [he] intentionally committed an act which, were the victim to die, would constitute murder on an implied malice or felony-murder theory. As we explained recently in *People* v. *Murtishaw* (1981) 29 Cal.3d 733 [175 Cal.Rptr. 738, 631 P.2d 446], such instructions are inadequate." (*People* v. *Ramos* (1982) 30 Cal.3d 553, 583 [180 Cal.Rptr. 266, 639 P.2d 908].) Because we cannot know whether the jury convicted defendant of attempted murder on the permissible basis of a finding of specific intent to kill or on another, impermissible basis, the error cannot be deemed harmless and the conviction must be reversed. (*People*

v. *Collie* (1981) 30 Cal.3d 43, 62 [177 Cal.Rptr. 458, 634 P.2d 534, 23 A.L.R.4th 776].)[1]

█ Defendant correctly contends, moreover, that the special circumstance findings are invalid and hence the judgment must be reversed as to penalty.

*Carlos* v. *Superior Court, supra,* 35 Cal.3d at pages 152-154, held that the 1978 death penalty law must be construed to require proof of intent to kill as an element of a felony-murder special circumstance, and that failure to so instruct is error. All cases, such as this, pending when *Carlos* was decided are subject to the rule. (*People* v. *Garcia, supra,* 36 Cal.3d at pp. 547-549.) *Garcia* declared the error reversible per se (*id.* at pp. 549-554), with four narrow exceptions (*id.* at pp. 554-556).

The court failed to instruct the jury, as defendant requested, that intent to kill was an element of the special circumstance allegations. The Attorney General admits the error. In reliance, however, on the so-called *Sedeno* and *Cantrell-Thornton* exceptions, he urges it was harmless. (*People* v. *Sedeno* (1974) 10 Cal.3d 703 [112 Cal.Rptr. 1, 518 P.2d 913]; *People* v. *Cantrell* (1973) 8 Cal.3d 672 [105 Cal.Rptr. 792, 504 P.2d 1256]; *People* v. *Thornton* (1974) 11 Cal.3d 738 [114 Cal.Rptr. 467, 523 P.2d 267].) We cannot agree.

The *Sedeno* exception, which looks to whether the question of intent to kill " 'was *necessarily* resolved adversely to the defendant under other, properly given instructions' " (*Garcia, supra,* 36 Cal.3d at p. 555, italics added), is not applicable here.

The Attorney General first argues that because the prosecutor "expressly discounted" the felony-murder theory and "placed principal reliance on the theory the murder . . . was cold-blooded, deliberate and premeditated," the jury necessarily found defendant acted with intent to kill. Even assuming the premise to be true, however, the inference does not follow: the jury was instructed on the elements of both first degree willful, premeditated and deliberate murder, which includes intent to kill, and first degree felony murder, which does not. There is no principled way for us to determine

---

[1] In a petition for habeas corpus filed in conjunction with the appeal, defendant contends his trial attorney committed certain specific errors and omissions relating to the guilt phase and thereby denied him effective assistance of counsel. Assuming for argument's sake that defendant's allegations are true, we conclude that in view of the strong showing of guilt by the prosecution, such ineffectiveness as defendant complains of did not prejudice him and therefore does not provide a basis for reversal. (*People* v. *Bell* (1984) 159 Cal.App.3d 323, 330 [205 Cal.Rptr. 568]; see *People* v. *Jackson* (1980) 28 Cal.3d 264, 346 [168 Cal.Rptr. 603, 618 P.2d 149]; *People* v. *Pope* (1979) 23 Cal.3d 412, 425 [152 Cal.Rptr. 732, 590 P.2d 859, 2 A.L.R.4th 1].)

which theory the jury adopted—or even whether it unanimously adopted either; therefore, we cannot conclude that the jury *necessarily* found intent to kill under the instructions defining premeditated and deliberate murder. (Cf. *People* v. *Green* (1980) 27 Cal.3d 1, 69 [164 Cal.Rptr. 1, 609 P.2d 468] ["when the prosecution presents its case to the jury on alternate theories, some of which are legally correct and others legally incorrect, and the reviewing court cannot determine from the record on which theory the ensuing general verdict of guilt rested, the conviction cannot stand"].)

But in any event the argument must be rejected because the premise on which it is based is untrue: far from "expressly discount[ing]" the felony-murder theory, the prosecutor presented both evidence and argument, and requested and obtained instructions, on that theory.

The Attorney General next urges that in convicting defendant of the attempted murder of Birks, the jury necessarily found he intended to kill Mesa. The thrust of his argument seems to be that the jury found defendant intended to kill Birks when he fired the shotgun and that it necessarily, albeit impliedly, found he intended to kill Mesa as well. But even if the inference is sound, the factual predicate on which it is based is not. We cannot determine whether it was in the firing of the shotgun that the jury found intent to kill or in defendant's subsequent bloody fight with Birks. Hence we must not speculate on the question.[2] Moreover, as we conclude above, the attempted murder conviction does not necessarily resolve the question of the intent to kill Mesa because it cannot be said to necessarily include a finding of intent to kill and for that reason must be reversed.

The *Cantrell-Thornton* exception is likewise inapplicable on this record. While there is evidence from which the jury could have found defendant intended to kill, there is also evidence from which it could have drawn the opposite conclusion. At no time did defendant admit he intended to kill Mesa; quite the opposite—he testified the shooting was accidental. Specifically, he stated that his shotgun discharged first as he was sliding out of the automobile on the driver's side with the weapon on his lap pointing in the direction of Mesa, who was sitting in the front passenger seat next to the

---

[2]The Attorney General's assertion that "[u]nder the facts [defendant] could not have intended to kill one victim without having the same intent to kill the other" seems not to be properly relevant to the *Sedeno* exception, which looks to the conclusion the jury's verdict necessarily implies rather than to an inference the evidence may support. (See *People* v. *Sedeno, supra,* 10 Cal.3d at p. 721.) Putting this objection aside, however, we observe that the verdicts do not necessarily imply the jury found defendant intended to kill Mesa: the jury could have found defendant accidentally killed Mesa in the commission of a felony, and accordingly convicted him of first degree murder, and could have found he intended to kill Birks in the bloody fight after the shooting, and convicted him of attempted murder.

door, and Birks, who was sitting on the floor in front of Mesa; and that it discharged again as he struggled with the two men on the seat.

In addition, although Birks testified that defendant intentionally fired the shots downward into the automobile from outside, the physical evidence appears consistent with defendant's version of the incident. The prosecution witnesses testified that the automobile was about five and one-half feet wide from window to window; that one shot, which hit Mesa, was fired at close range—less than two feet and perhaps as close as six inches away—and travelled upward at a 20-degree angle; and that the other shot, which struck the inside panel of the passenger door, was fired from a distance of about five feet. "The jury was, of course, free to reject defendant's testimony and to find that he did, in fact, intend to kill [his] victim[]. Nonetheless, on this record the question of intent cannot be decided as a matter of law and defendant's evidence cannot be dismissed as 'not worthy of consideration.'" (*People* v. *Ramos* (1984) 37 Cal.3d 136, 149 [207 Cal.Rptr. 800, 689 P.2d 430].)

It follows that the special circumstance findings must be set aside under *Carlos,* and we need not reach defendant's other contentions going to the special circumstance findings or the penalty phase. Because the invalid special circumstance findings were the sole basis for conducting that proceeding, the judgment as to penalty is unsupported as a matter of law and must likewise be set aside.

The judgment is affirmed as to the first degree murder, kidnaping and robbery convictions and reversed as to the attempted murder conviction, the special circumstance findings are set aside, and the judgment is reversed as to penalty. The petition for habeas corpus is denied.

Bird, C. J., Broussard, J., Reynoso, J., Grodin, J., and Kaus, J.,* concurred.

LUCAS, J.—I concur with the majority opinion to the extent it affirms defendant's first degree murder, kidnaping and robbery convictions and reverses his attempted murder conviction. I dissent, however, from the remaining portion of the judgment, setting aside the special circumstances findings and reversing the judgment of death by reason of *People* v. *Garcia* (1984) 36 Cal.3d 539 [205 Cal.Rptr. 265, 684 P.2d 826], and *Carlos* v. *Superior Court* (1983) 35 Cal.3d 131 [197 Cal.Rptr. 79, 672 P.2d 862]. For reasons I have previously expressed, I strongly disagree with the hold-

---

*Retired Associate Justice of the Supreme Court sitting under assignment by the Chairperson of the Judicial Council.

ings in those cases. (See *People* v. *Whitt* (1984) 36 Cal.3d 724, 749 [205 Cal.Rptr. 810, 685 P.2d 1161] [dis. opn.].)

Although I have in the past concurred in reversals of some capital cases under the compulsion of *Carlos/Garcia* (see, e.g., *People* v. *Anderson* (1985) 38 Cal.3d 58, 62 [210 Cal.Rptr. 777, 694 P.2d 1149]), I can no longer characterize myself as "concurring" in these reversals. The *Carlos* and *Garcia* rulings are responsible for an increasing number of unnecessary reversals and retrials. I would join three of my colleagues in reexamining, and ultimately overruling, those decisions. Accordingly, I cannot join in the judgment of reversal.

Respondent's petition for a rehearing was denied December 31, 1985, and the judgment was modified to read as printed above.