Filed 1/27/21  P. v. Leslie CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>　　Plaintiff and Respondent,<br><br>　　v.<br><br>DESHAWN LESLIE,<br><br>　　Defendant and Appellant. | B301848<br><br>(Los Angeles County<br>Super. Ct. No. TA091536) |

　　APPEAL from an order of the Superior Court of Los Angeles County, H. Clay Jacke II, Judge.  Affirmed.

　　Susan K. Shaler, under appointment by the Court of Appeal, for Defendant and Appellant.

　　Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Idan Ivri and Roberta L. Davis, Deputy Attorneys General, for Plaintiff and Respondent.

In 2008, a jury convicted defendant and appellant Deshawn Leslie of the first degree murder of Ivan Nieves. Leslie's accomplice was the actual killer. After passage of Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill 1437), Leslie petitioned for resentencing pursuant to Penal Code section 1170.95.[1] After appointing counsel for Leslie and considering briefing by the parties, the court denied the petition because Leslie's jury was not instructed on felony murder or the natural and probable consequences doctrine, and he was convicted as a direct aider and abettor. Leslie appeals, contending that the jury might have relied on the natural and probable consequences theory despite the absence of instruction on it, and the trial court erred by relying on this court's opinion in his direct appeal. We disagree, and affirm the court's order.

FACTUAL AND PROCEDURAL BACKGROUND[2]

1. *The murder*

Leslie was a member of the Tree Top Piru criminal street gang. Leslie's cousin, known as "Day-Day," and William Davis were also members of the gang. The Segundos, a Hispanic gang, and the Tree Top Piru gang were rivals. Segundo gang members were known to wear blue baseball caps.

---

[1]      All further undesignated statutory references are to the Penal Code.

[2]      At Leslie's request, we have taken judicial notice of this court's records in his direct appeal, case No. B206632. (Evid. Code, §§ 452, subd. (d), 459.) We derive the factual and procedural background primarily from our prior opinion, which is part of the record of conviction.

2

On April 22, 2006, Day-Day was shot and wounded. Members of the Tree Top Piru gang believed the Segundo gang was responsible. That evening, Davis asked Leslie to drive him around so he could " 'look and see if anybody [was] out.' " Leslie agreed. Davis was armed with a gun. Leslie drove down Lime Avenue in Compton, an area claimed as the Segundo gang's territory. A second vehicle, driven by another Tree Top Piru gang member, followed behind Leslie's car.

Nieves, who was Latino, was seated in his Mustang on Lime Avenue, wearing a blue Dodgers baseball cap. He was not a member of any gang. Leslie parked his car in front of Nieves's Mustang. He knew Davis intended to " 'bang on [Nieves] and ask him where he was from,' " i.e., challenge Nieves by asking for his gang affiliation. Davis exited the car, walked over to Nieves, and—believing Nieves was a Segundo gang member—fired numerous rounds at him. Eight shots hit Nieves, killing him.

2. *Leslie's conviction and direct appeal*

At Leslie's trial, the prosecution advanced two theories: that Leslie could be found guilty of first degree murder as an aider and abettor, or under a conspiracy theory. The jury convicted him of first degree murder. It also found true principal-armed and criminal street gang enhancements. (§§ 12022.53, subd. (d), 186.22, subd. (b)(1).) The trial court sentenced Leslie to 50 years to life in prison, plus a consecutive life term.

This court affirmed Leslie's judgment in 2009. (*People v. Leslie* (Mar. 18, 2009, B206632) [nonpub. opn.].)

3. *The section 1170.95 petition*

On January 29, 2019, Leslie filed a section 1170.95 resentencing petition. Using a preprinted form, he checked boxes stating that a charging document had been filed against him

3

allowing the prosecution to proceed under a felony-murder theory or the natural and probable consequences doctrine; he was convicted of first or second degree murder under one of those theories; he could not now be convicted of murder in light of changes to the law wrought by Senate Bill 1437; he was not the actual killer, nor did he aid and abet the actual killer with the intent to kill; he was not a major participant in the felony and did not act with reckless indifference to human life; and the victim was not a peace officer. He also requested the appointment of counsel.

The trial court appointed counsel for Leslie. The People opposed the petition on the grounds that Leslie was convicted as a direct aider and abettor, not pursuant to the natural and probable consequences doctrine or the felony-murder rule.[3] Leslie argued, through his appointed counsel, that based on his version of events, he did not intend to kill, and he did not know Davis planned to shoot Nieves.

After a hearing conducted pursuant to section 1170.95, subdivision (d)(3), the trial court denied the motion. It found that Leslie was not convicted under the felony-murder rule or the natural and probable consequences doctrine, and acted as an aider and abettor with the intent to kill. Therefore, his conviction remained valid under current law.

---

[3]     The People also argued that Senate Bill 1437 was unconstitutional. The trial court did not deny the petition on this basis, and Senate Bill 1437's constitutionality is not at issue here.

Leslie filed a timely notice of appeal.

DISCUSSION

Leslie contends the trial court erred by relying on this court's opinion in his direct appeal, and—despite the fact the jury was not instructed on the natural and probable consequences doctrine—it could nevertheless have found him guilty of murder based on this theory. We disagree.

1. *Senate Bill 1437*

Senate Bill 1437, which took effect on January 1, 2019, limited accomplice liability under the felony-murder rule and eliminated the natural and probable consequences doctrine as it relates to murder, to ensure that a person's sentence is commensurate with his or her individual criminal culpability. (*People v. Cruz* (2020) 46 Cal.App.5th 740, 752; *People v. Verdugo* (2020) 44 Cal.App.5th 320, 323, review granted Mar. 18, 2020, S260493; *People v. Munoz* (2019) 39 Cal.App.5th 738, 749–750, 763, review granted Nov. 26, 2019, S258234.)

Prior to passage of Senate Bill 1437, under the natural and probable consequences doctrine a defendant was "liable for murder if he or she aided and abetted the commission of a criminal act (a target offense), and a principal in the target offense committed murder (a nontarget offense) that, even if unintended, was a natural and probable consequence of the target offense." (*People v. Lamoureux* (2019) 42 Cal.App.5th 241, 248; *People v. Munoz, supra*, 39 Cal.App.5th at p. 749, rev.gr.) Senate Bill 1437 amended section 188 to state that malice may not be imputed to a person based solely on his or her participation in a crime. (§ 188, subd. (a)(3).) Thus, pursuant to Senate Bill 1437, where the felony-murder rule is not at issue, a

person must act with malice to be convicted of murder. (*People v. Munoz*, at p. 749.)

### 2. *Section 1170.95's petitioning procedure*

Senate Bill 1437 also added section 1170.95, which created a procedure whereby persons convicted of murder under a felony-murder or natural and probable consequences theory may petition in the sentencing court for vacation of their convictions and resentencing. A defendant is eligible for relief under section 1170.95 if he meets three conditions: (1) he must have been charged with murder under a theory of felony murder or murder under the natural and probable consequences doctrine, (2) must have been convicted of first or second degree murder, and (3) could no longer be convicted of first or second degree murder due to changes to sections 188 and 189 wrought by Senate Bill 1437. (§ 1170.95, subd. (a).)

Evaluation of a section 1170.95 petition requires a multi-step process: an initial review to determine the petition's facial sufficiency; a prebriefing, "first prima facie review" to preliminarily determine whether the petitioner is statutorily eligible for relief as a matter of law; and a second, postbriefing prima facie review to determine whether the petitioner has made a prima facie case that he or she is entitled to relief. (*People v. Tarkington* (2020) 49 Cal.App.5th 892, 897, review granted Aug. 12, 2020, S263219; *People v. Verdugo, supra*, 44 Cal.App.5th at pp. 327–330, rev.gr.; *People v. Nguyen* (2020) 53 Cal.App.5th 1154, 1165–1166.) If the petitioner makes such a showing, the court must issue an order to show cause (OSC) and conduct a hearing to determine whether to vacate the murder conviction

6

and resentence the petitioner on any remaining counts.
(§ 1170.95, subds. (c), (d); *People v. Nguyen*, at pp. 1165–1166.)[4]

At that hearing, the burden of proof is on the prosecution to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing. Both the People and the petitioner may rely on the record of conviction, including an appellate opinion in the case, and, where appropriate, may also present additional evidence to demonstrate the petitioner is, or is not, entitled to resentencing. (§ 1170.95, subd. (d)(3); see *People v. Tarkington*, *supra*, 49 Cal.App.5th at pp. 899, fn. 5, 909, rev.gr.; *People v. Verdugo*, *supra*, 44 Cal.App.5th at p. 333, rev.gr.) "If the prosecution fails to sustain its burden of proof, the prior conviction, and any allegations and enhancements attached to the conviction, shall be vacated and the petitioner shall be resentenced on the remaining charges." (§ 1170.95, subd. (d)(3); *People v. Nguyen*, *supra*, 53 Cal.App.5th at p. 1166.)

3. *Because Leslie was not convicted under the felony-murder rule or the natural and probable consequences doctrine, he is ineligible for relief*

Leslie is not eligible for relief under section 1170.95 because the jury instructions conclusively show he was convicted based on a theory—direct aiding and abetting—that survives Senate Bill 1437's amendments to sections 188 and 189. "[P]otential relief under section 1170.95 extends only to those convicted of murder by operation of the natural and probable

---

[4] It does not appear that the trial court issued an OSC in the instant matter, but the record shows the parties and the court considered the hearing to be pursuant to section 1170.95, subdivision (d)(3).

7

consequence doctrine or of felony murder. [Citation.]" (*People v. Soto* (2020) 51 Cal.App.5th 1043, 1056 (*Soto*), review granted Sept. 23, 2020, S263939; § 1170.95, subd. (a)(3); *People v. Lee* (2020) 49 Cal.App.5th 254, 263–265, review granted July 15, 2020, S262459.) Leslie's jury was not instructed on either the natural and probable consequences doctrine or the felony-murder rule; therefore, he could not have been convicted based on either of these theories. (*Soto*, at p. 1055 [trial court may rely on jury instructions when determining whether petitioner has made a prima facie showing of entitlement to relief]; *People v. Edwards* (2020) 48 Cal.App.5th 666, 674, review granted July 8, 2020, S262481 [where jury instructions showed petitioner was not convicted under felony-murder or natural and probable consequences theories, he could not meet the statutory prerequisites for filing a § 1170.95 petition]; *People v. Lewis* (2020) 43 Cal.App.5th 1128, 1138, review granted Mar. 18, 2020, S260598 [where court file shows petitioner was convicted of murder without instruction or argument on the felony-murder rule or the natural and probable consequences doctrine, summary denial would be appropriate].)

Instead, Leslie was convicted of willful, deliberate, and premeditated murder as a direct aider and abettor. To render that verdict, the jury necessarily determined he acted with the intent to kill. As this court explained in its 2009 opinion: "The instruction on murder stated that the perpetrator was guilty of first degree murder if he acted willfully, deliberately, and with premeditation. It further stated that '[t]he defendant acted willfully if he intended to kill.' CALCRIM No. 401 advised that, to be guilty as an aider and abettor, Leslie had to have known that the perpetrator intended to commit the crime, i.e., murder,

8

and 'intended to aid and abet the perpetrator in committing the crime.' If a defendant knows the perpetrator intends to commit murder, and intends to aid the perpetrator in committing the murder, the aider and abettor necessarily intends to kill." (*People v. Leslie, supra*, B206632.)

Because the jury necessarily found Leslie acted with express malice, he could still be convicted under current law. Senate Bill 1437 "did not . . . alter the law regarding the criminal liability of direct aiders and abettors of murder because such persons necessarily 'know and share the murderous intent of the actual perpetrator.' [Citations.] One who directly aids and abets another who commits murder is thus liable for murder under the new law just as he or she was liable under the old law." (*People v. Lewis, supra*, 43 Cal.App.5th at p. 1135, rev.gr.; *People v. Verdugo, supra*, 44 Cal.App.5th at pp. 335–336, rev.gr. [petitioner ineligible where conviction for premeditated murder required specific intent to kill]; *People v. Nguyen, supra*, 53 Cal.App.5th at p. 1164 [direct aiding and abetting theory is still viable after passage of Sen. Bill 1437]; *Soto, supra*, 51 Cal.App.5th at pp. 1056–1057, rev.gr.)

Leslie does not dispute that the prosecution relied on a direct aiding and abetting theory at trial, and that the jury was instructed that malice was required to find him guilty. At the hearing on the petition, Leslie's counsel conceded that the jury concluded he was a direct aider and abettor. Nonetheless, Leslie advances several arguments in support of his contention that he is entitled to resentencing. None has merit.

Leslie hypothesizes that the jury could have convicted him based on the natural and probable consequences doctrine, despite the fact it was never instructed on it. He points out that

9

CALCRIM No. 520 uses the phrase "natural consequences" in its definition of implied malice.[5]  From this, he argues that the jury could have concluded he "harbored the requisite intent for murder by committing an act, the *natural consequences'* of which were dangerous to human life."

A similar argument was rejected in *Soto, supra*, 51 Cal.App.5th 1043, review granted.  There, the "natural consequences" language was contained in both the implied malice instruction and in a second degree murder instruction.  (*Id.* at p. 1056.)  After discussing the "distinctly different concepts" underlying aiding and abetting and the natural and probable consequences doctrine (*ibid.*), the court observed that Soto's jury had not been instructed on any target offense upon which the natural and probable consequences theory could have been based.  "The 'natural consequences' language in the instruction for second degree murder does not transform [defendant's] conviction into one for murder under the natural and probable consequences doctrine within the meaning of section 1170.95."  (*Id.* at pp. 1058–1059; see *People v. Edwards, supra*, 48 Cal.App.5th at p. 674, rev.gr. [fact instruction and argument included phrase

---

[5]  As provided to Leslie's jury, CALCRIM No. 520 stated in relevant part: "There are two kinds of malice aforethought, express malice and implied malice.  Proof of either is sufficient to establish the state of mind required for murder.  [¶]  The defendant acted with express malice if he unlawfully intended to kill.  [¶]  The defendant acted with implied malice if: [¶] 1.  He intentionally committed an act; [¶]  2.  The natural consequences of the act were dangerous to human life; [¶] 3.  At the time he acted, he knew his act was dangerous to human life; [¶] AND [¶] 4.  He deliberately acted with conscious disregard for human life."

"natural and probable consequences" did not demonstrate petitioner was charged or convicted under that doctrine].)

The same is true here. Leslie's jury was not instructed on a target crime or on the natural and probable consequences theory of liability. The notion that the jury could have vaulted from the single phrase "natural consequences" in the implied malice instruction, to full consideration of a natural and probable consequences theory upon which it was never instructed, is fanciful. Moreover, the jury here did not rely on an implied malice theory: it found Leslie guilty of first degree murder, which—based on the instructions given—required a finding he committed the murder willfully, intentionally, and with premeditation.

In a further attempt to show his jury could have adopted a natural and probable consequences theory, Leslie reasons that at trial, the parties discussed whether a natural and probable consequences instruction should be given; thus, there must have been substantial evidence to support such an instruction; and therefore, the jury might have convicted based on that theory. But the conclusion does not follow from the premise.[6] The salient point is that the jury *was not instructed* on the doctrine, regardless of the content of the parties' discussions. Equally unpersuasive is Leslie's assertion that the "jury was not bound by the prosecutor's theory." The jury was bound by the instructions, which we presume it followed. (See, e.g., *People v. Silveria and*

---

[6]   In fact, during the parties' discussion the prosecutor averred that there was *insufficient* evidence of a target crime to support a natural and probable consequences instruction. At the hearing on the petition, Leslie's counsel echoed that sentiment.

11

*Travis* (2020) 10 Cal.5th 195, 245 [court presumes jury "understood and followed" instructions].) The instructions given did not allow reliance on the natural and probable consequences doctrine.[7]

Leslie also contends that the trial court resolved the wrong question. In his view, the issue before the court was whether the jury *could have* convicted him on a theory that is no longer valid. In other words, he appears to assert that, if there was evidence from which the jury could have found him guilty on a natural and probable consequences theory in addition to a direct aiding and abetting theory, his petition should have been granted. But

---

[7] Leslie's citations to *People v. Barton* (1995) 12 Cal.4th 186, *People v. Webster* (1991) 54 Cal.3d 411, and *People v. Guerra* (1985) 40 Cal.3d 377, are unavailing. The cited portion of *Barton* discussed the standard for instruction on a lesser included offense, a conceptually distinct issue from that here. (*People v. Barton*, at p. 203.) In *Webster*, the defendant took both a key and a vehicle from the victim, and the jury instructions did not specify which item was the object of the robbery. To determine whether the evidence was sufficient, the court considered whether each item was taken by means of force and fear and from the victim's person or immediate presence. In this regard, the court reasoned that it could "not uphold the robbery findings unless we conclude there was substantial evidence to support *all* the robbery theories before the jury." (*People v. Webster*, at pp. 439–443 & fn. 16.) The cited portion of *Webster* has no relevance to the questions at issue here. And in *Guerra*, the court instructed on both felony murder and premeditated murder; our Supreme Court reasoned that there was "no principled way" for it to determine which theory the jury adopted. (*People v. Guerra*, at pp. 387–388.) In other words, unlike the situation here, the jury was actually instructed on both theories.

based on the plain language of section 1170.95, the touchstone is whether the petitioner *could not be* convicted under current law. The People's task, therefore, is to show the converse, that the petitioner *could be* convicted of murder despite Senate Bill 1437's amendments to sections 188 and 189.  Where a jury has already found petitioner guilty on a theory requiring malice, this fact *necessarily* proves he *could be* convicted of murder despite Senate Bill 1437's amendments.  Even assuming arguendo that there was sufficient evidence to prove guilt on a natural and probable consequences theory, this circumstance would not detract from the ineligibility showing.

Leslie next argues that the court erred by relying on this court's 2009 opinion.[8]  This contention fails for at least three reasons.  First, section 1170.95 expressly states that at a subdivision (d)(3) hearing, the parties may rely on "the record of conviction."  (§ 1170.95, subd. (d)(3).)  An appellate opinion is part of the record of conviction.  (See, e.g., *People v. Lewis*, *supra*, 43 Cal.App.5th at p. 1136, fn. 7, rev.gr.; *People v. Verdugo*, *supra*, 44 Cal.App.5th at p. 333, rev.gr.; *People v. Tarkington*, *supra*, 4  Cal.App.5th at p. 899, fn. 5, rev.gr.)  Second, Leslie did not object to the trial court's reliance on the 2009 opinion; therefore, he has forfeited this contention.  (Evid. Code, § 353, subd. (a).)  Third, even if the trial court erred, any misstep was harmless.  "[R]egardless of the trial court's reliance on the facts in this court's prior opinion to explain how the malice element of murder

---

[8]     Our Supreme Court is currently considering whether superior courts may consider the record of conviction in determining whether a defendant has made a prima facie showing of eligibility for relief under section 1170.95.  (*People v. Lewis*, S260598.)

may have been satisfied at [defendant's] trial, the jury instructions themselves demonstrate as a matter of law that [defendant] could not make a prima facie showing that he is entitled to relief." (*Soto*, *supra*, 51 Cal.App.5th at p. 1055, rev.gr.)

In sum, because the jury instructions given conclusively demonstrate as a matter of law that Leslie was not convicted of murder under a natural and probable consequences or felony-murder theory, the trial court correctly denied his section 1170.95 petition. (*Soto*, *supra*, 51 Cal.App.5th at p. 1059, rev.gr.) Because the trial court did not err, Leslie's contention that his due process rights were violated necessarily fails.

## DISPOSITION

The order is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

EDMON, P. J.

We concur:

EGERTON, J.

DHANIDINA, J.

14