Filed 9/4/25  P. v. Turner CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE


| | |
|---|---|
| THE PEOPLE, | B335121 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. Nos. SA102755 and BA498371) |
| v. | |
| EDDIE TURNER, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Henry J. Hall, Judge.  Affirmed.

Mi Kim, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Zee Rodriguez and Michael C. Keller, Deputy Attorneys General, for Plaintiff and Respondent.

* * * * * *

Eddie Turner (defendant) appeals his convictions for making threats and engaging in harassing communications with the criminal defense attorney who previously represented him. He asserts that the trial court erred in not declaring a doubt about his competency to stand trial. Because the trial court did not have before it substantial evidence of defendant's incompetency (*People v. Mai* (2013) 57 Cal.4th 986, 1032-1033 (*Mai*)), the court did not err. We accordingly affirm defendant's convictions.

## FACTS AND PROCEDURAL BACKGROUND

### I. Defendant's Initial Round of Threats and Harassment To His Former Defense Attorney

In 2016, a jury convicted defendant of grand theft, fraud and perjury arising out of a real estate scheme. During those criminal proceedings, defendant was represented by attorney Winston McKesson.

Upon defendant's release in April 2019 from the sentence imposed for those convictions, defendant contacted McKesson to request copies of an immunity agreement between the People and a prosecution witness in the 2016 trial, which defendant felt had been wrongfully withheld from him. Once defendant's parole ended in April 2020, defendant's contacts with McKesson grew more aggressive and threatening. Through a series of text messages and voice mails, defendant repeatedly told McKesson

2

that his disagreement with McKesson had become "personal"; told McKesson that he did not "like [him]" or "[his] bitch" (that is, McKesson's wife); told McKesson that he and his "lady friend" "have to pay"; and promised McKesson that it was "jus[t] a matter of time" before defendant lit "the [cigar] that blows up in [McKesson's] face," and that McKesson "can run, but can't hide forever." At other times, defendant said he would "touch" McKesson "[f]inancially," that he would "ruin" the "career[s]" of McKesson and his wife, and that McKesson would "be the scape goat on charges of ineffective assistance of counsel." Defendant's messages were infused with racist language and iconography. Both McKesson and defendant are African-American.

## II. Initial Charges Against Defendant

On June 22, 2020, the People[1] filed a criminal complaint charging defendant with (1) two counts of making criminal threats, as felonies (Pen. Code, § 422),[2] (2) two counts of making criminal threats, as misdemeanors (*ibid.*), (3) three counts of making annoying telephone calls or contact by electronic communication, as misdemeanors (§ 653m, subd. (a)), and (4) one count of making repeated contacts with intent to annoy or harass, as a misdemeanor (*id.*, subd. (b)).[3]

---

[1] Because McKesson's wife worked for the District Attorney's Office (and was implicated in the alleged threats), the matter was prosecuted by the Office of the Attorney General.

[2] All further statutory references are to the Penal Code unless otherwise indicated.

[3] On August 11, 2020, the People amended the complaint to add a second misdemeanor count of making repeated contacts with intent to annoy or harass (§ 653m, subd. (b)).

3

On July 21, 2020, the trial court ordered defendant not to contact McKesson, McKesson's wife, or McKesson's children or relatives, and on August 19, 2020, a civil trial court issued a restraining order prohibiting such contact.

## III. Pretrial Proceedings

The pretrial proceedings in this case spanned from August 2020 through January 2024, when trial commenced. During this period, defendant appeared before six judges. During this same period, defendant had seven appointed lawyers—as well as seven *Marsden*[4] hearings.

Between October 8, 2021 and June 15, 2022, defendant represented himself. Before granting defendant's request for self-representation, the trial court questioned defendant at length, during which time defendant stated he had a college degree, had represented himself in "several" civil cases (because he had worked as a landlord), had conducted legal research, and had written legal motions. Defendant also reported that he had never been "examined by a psychiatrist or psychologist to determine [his] mental competence." In granting the request, the trial court expressly found that defendant "ha[d] the mental capacity to understand the proceedings." The grant occurred in the middle of defendant's preliminary hearing. Defendant immediately objected to the admission of the text messages and voicemails he sent to McKesson on the ground of attorney-client privilege, demanded a ruling on a prior request for judicial notice, and cross examined the investigating officer about prior *Pitchess*[5] material,

---

**4**    *People v. Marsden* (1970) 2 Cal.3d 118.

**5**    *Pitchess v. Superior Court* (1974) 11 Cal.3d 531, superseded by statute as stated in *People v. Breaux* (1991) 1 Cal.4th 281, 311.

4

about whether the officer's investigation was "one-sided" because he only interviewed McKesson (and not defendant), and about whether McKesson was under oath during the officer's interviews. The trial court noted that defendant was making "legitimate arguments." At subsequent hearings in November 2021 and January 2022, defendant was careful to put certain matters "on the record," described the elements of one of the charged crimes, remarked that he "underst[oo]d the law" but requested "advisory counsel" to assist him with discovery, correctly noted that questions of privilege were for the court and not the jury, and correctly referred to the use of subpoenas duces tecum. Defendant's self-represented status was revoked solely because defendant had engaged in "threatening conduct" against McKesson on the day of the revocation, because defendant was "overtalk[ing]" the court, and because defendant—who at that hearing called the court a "kangaroo court"—had been "rude" and "insolent."

Defendant regularly acted in an inappropriate manner while in court. On at least four occasions, he raised his voice and started yelling at the trial judge whenever the judge indicated disagreement with defendant's position. At one hearing where the court asked him not to yell, defendant sought to justify his behavior by saying he was "a little hard of hearing," by asserting that he "suffer[ed] from P.T.S.D.," and by noting that he was "wearing [a] mask." On another occasion, defendant simply responded that there was nothing "offen[sive]" about his shouting at the judge. During a July 28, 2021 hearing, defendant angrily yelled that he could see and talk to the People's attorney "any time he wanted to outside of court," and prior to a December 27, 2023 hearing, defendant sent his then-attorney an email stating

5

that "charges better be dropped at our next hearing and THEM bum-ass squatters BETTER START PACKING AND GET THE FUCK OUT OF [the property that was the subject of defendant's 2016 real estate scheme] OR shit is really going to hit the fan and starting with your ineffective assistance of counsel." At a November 2022 hearing, defendant was removed from the courtroom because he refused to sit down during the hearing. And at the December 27, 2023 hearing, defendant got up in the middle of the hearing and started to leave the courtroom. When the court informed him that he would be taken into custody if he left, defendant argued that he "never made it outside the courtroom" because the court's admonition "stopped [him]." The court placed him in custody.

## IV.    Further Harassment Resulting in New Charges

In March 2022, the court quashed all outstanding subpoenas related to the 2016 immunity agreement and ruled that the immunity agreement had "no relevance" to the current charges. Three months later, defendant served subpoenas for the immunity agreement on McKesson despite the court's prior ruling and the protective order prohibiting direct or indirect contact with McKesson.

On June 15, 2022, defendant approached McKesson in the hallway outside the courtroom, hurled profanities at him, and ultimately told him, "I'll fuck you up."

In a separate case, the People[6] on August 1, 2022, charged defendant with intentionally violating a court order to prevent harassment (§ 273.6) and disobeying a court order (§ 166, subd.

---

**6**    As with the other case, the People acted through the Office of the Attorney General.

(a)(4)), both as misdemeanors.[7]  Defendant appeared before three more judges—one of whom granted defendant permission to proceed as his own counsel.

On April 24, 2023, the court relieved his then-appointed attorney as counsel of record in the first-filed criminal case, and on May 17, 2023 appointed new counsel.

On September 13, 2023, the court revoked defendant's self-represented status in the second-filed criminal case, and appointed the same counsel to represent defendant in that case also.

## V.     Consolidation of Cases And Defense Counsel's Declaration of a Doubt About Defendant's Competency

On December 8, 2023, the trial court consolidated both of the criminal cases into a single action.

On January 4, 2024, the first day set for trial, defense counsel informed the court that he was in "a difficult position" and that he was "in a quandary [about] how to handle this going forward" because he "can't communicate with [defendant] at all." When the trial court responded that defendant had been "difficult for everybody" and that defendant's "elect[ion] not to cooperate . . . and not to discuss the issues" was "on him," defense counsel proceeded to "declare[] a doubt" as to whether defendant was competent to stand trial, citing (1) defendant's "complete inability to help" counsel because defendant "focus[es]" on "extraneous matters" rather than "actual issues," (2) defendant's "behavior in

---

7     The People also charged defendant with dissuading a witness from testifying (§ 136.1, subd. (c)(1)) and with threatening a witness, as a felony (§ 140, subd. (a)), but the trial court dismissed the dissuasion charge after the preliminary hearing, and the jury acquitted defendant of the threat charge.

th[e] courtroom," and (3) counsel's belief that defendant did not "fully understand[] what this case is really about." Defense counsel indicated he had "considered whether to declare a doubt . . . several times" and had "seen quite a bit more" behavior, but did not elaborate. The trial court asked the prosecutor for his view of defendant's competence, and the prosecutor responded that defendant was "able to comply when it is in his best interests, but that he very tactically decides not to [comply] when he believes that that is in his best interests." The court also asked defendant whether he knew and "underst[ood]" the charges against him; defendant responded—as he had many times before—that he "didn't understand" how each charge "lined up" with his actual conduct, and that he had been "focused" on "attorney/client privilege" issues rather than "what the crimes were." Defendant also informed the court that he was "representing himself across the street in the Court of Appeal"; when the court indicated self-representation is not permitted in the appellate courts in criminal cases, defendant responded that he was pursuing a "civil" "writ of mandate."

In responding to counsel's declaration of a doubt about defendant's competency, the court addressed each of counsel's asserted bases for that doubt. Regarding defendant's alleged inability to assist counsel, the court found that, despite defendant's "focus[] on issues that may or may not have much to do with this case," defendant "certainly has the ability to cooperate with counsel," and that his "[un]willingness to do so" was "not part of the legal test for competence." Regarding defendant's behavior in the courtroom, the court noted that defendant was at that moment "sitting here and behaving appropriately" and that his "trouble complying with the rules" in

8

court was thus defendant's *choice*, as the court did not "see anything in [defendant's] mental or physical makeup that suggests . . . he is not capable" of acting appropriately.  Regarding defendant's understanding of the case, the court found that defendant is "intelligent"; that "he speaks cogently"; that his responses to the court's questions indicate that "he understands exactly what's going on"; and that his ability to represent himself in this case for a substantial period of time left "no question" in the court's mind that defendant "knows exactly what's going on." The court accordingly declined to declare a doubt about defendant's competency to stand trial.

## VI.    Trial, Sentencing and Appeal

The matter proceeded to trial.  A jury convicted defendant of all charges except it convicted him of the lesser-included offense of attempted criminal threats (for one of the misdemeanor counts) and, as noted above, acquitted him of felony threatening a witness.  The trial court imposed a prison term of three years and eight months and a consecutive term of 1,448 days in county jail.[8]  Defendant filed a timely notice of appeal.

---

[8]    Specifically, on the two felony criminal threat counts, the court imposed a high-term, three-year prison sentence for one, and a consecutive eight-month prison term (one-third of the mid-term, two-year sentence) for the second.  On the misdemeanor counts, the court imposed consecutive county jail terms of 364 days for disobeying a court order; 364 days for intentionally violating a court order to prevent harassment; 240 days for making a criminal threat; 120 days for an attempted criminal threat; 180 days for sending obscene or threatening messages; and 180 days for sending repeated harassing messages.  The court also imposed two concurrent jail terms of 180 days each, for sending obscene or threatening messages and for sending repeated harassing messages; and imposed but stayed a jail term

## DISCUSSION

Defendant argues that the trial court erred in not declaring a doubt about his competency to stand trial, and thus in not suspending the criminal proceedings and setting a hearing to determine his competency.

## I. Pertinent Law

"The constitutional guarantee of due process forbids a court from trying or convicting a criminal defendant who is mentally incompetent to stand trial." (*People v. Rodas* (2018) 6 Cal.5th 219, 230 (*Rodas*).) A criminal defendant is mentally incompetent to stand trial if they (1) lack a ""sufficient present ability to consult with [their] lawyer with a reasonable degree of rational understanding,"" or (2) lack ""a rational as well as a factual understanding of the proceedings against [them]."" (*People v. Sattiewhite* (2014) 59 Cal.4th 446, 464 (*Sattiewhite*), quoting *Dusky v. United States* (1960) 362 U.S. 402, 402; *People v. Ghobrial* (2018) 5 Cal.5th 250, 269.) Critically, however, this incompetence to stand trial must be the "result of a mental health disorder or developmental disability." (§ 1367, subd. (a); *Rodas*, at p. 230; *People v. Wycoff* (2021) 12 Cal.5th 58, 82 (*Wycoff*) ["'federal constitutional law [means] that an accused has the right "to a hearing on present sanity if he comes forward with substantial evidence that he is incapable, *because of mental illness*, of understanding the nature of the proceedings against him or of assisting in his defense,"" italics added, citing *People v. Pennington* (1967) 66 Cal.2d 508, 518]; *Ghobrial*, at p. 270; *People v. Lewis* (2008) 43 Cal.4th 415, 525, disapproved on another ground by *People v. Black* (2014) 58 Cal.4th 912, 919.) A trial

---

of 180 days for an additional count of sending obscene or threatening messages.

court is obligated to suspend the criminal proceedings and initiate proceedings to determine whether the defendant is competent to stand trial if "'"the court is presented with substantial evidence of incompetence,"'" which is defined as "'"evidence that raises a reasonable or bona fide doubt concerning the defendant's competence to stand trial."'"[9] (*Sattiewhite*, at p. 464, quoting *People v. Rogers* (2006) 39 Cal.4th 826, 847.)

In assessing whether the evidence raises a reasonable or bona fide doubt concerning the defendant's competence to stand trial, courts must "consider all of the relevant circumstances" (*People v. Howard* (1992) 1 Cal.4th 1132, 1164 (*Howard*)), which include (1) "'"prior mental evaluations"'" and (2) "'"the defendant's demeanor[] [and] irrational behavior"'" (*Sattiewhite, supra*, 59 Cal.4th at p. 464; *Mai, supra*, 57 Cal.4th at pp. 1032-1033; *People v. Welch* (1999) 20 Cal.4th 701, 742 (*Welch*)). Although a sworn "professional opinion" that, due to "mental illness," a defendant "is incapable of understanding the purpose or nature of the criminal proceedings against him, or of cooperating with counsel" constitutes "substantial evidence" (*Mai*, at pp. 1032-1033), "bizarre . . . behavior" by itself does not (*Sattiewhite*, at p. 464). And although a defense counsel's declaration of a doubt is relevant and entitled to "'some weight,'" it also does not constitute substantial evidence. (*Sattiewhite*, at p. 465, quoting *Mai*, at p. 1033; *Howard*, at p. 1132.)

If substantial evidence of incompetence exists, the trial court *must* declare a doubt and suspend the criminal proceedings—even if there is contrary evidence—because

---

[9] Counsel must also share that doubt (§ 1368, subd. (b)), but that requirement was met in this case because defense counsel was the one who first articulated a doubt.

11

resolution of any conflicts as to competence are to be resolved at the competency trial once the threshold of "substantial evidence" is met. (*Rodas, supra*, 6 Cal.5th at pp. 231, 234; *Wycoff, supra*, 12 Cal.5th at pp. 82-83.) However, if the evidence of incompetence is less than substantial, a trial court retains discretion whether to suspend the criminal proceedings. (*Mai, supra*, 57 Cal.4th at p. 1033.) We independently review the substantiality of the evidence (*People v. Guerra* (1985) 40 Cal.3d 377, 383), but review for an abuse of discretion a court's decision not to suspend proceedings when the evidence is less than substantial (*People v. Bloom* (2022) 12 Cal.5th 1008, 1030).

## II.  Analysis

We independently conclude that the trial court did not err in concluding that there was not "substantial evidence" of mental incompetence warranting suspension of the criminal proceedings (and did not otherwise abuse its discretion in declining to exercise its discretion to suspend the proceedings). Two reasons support our conclusion.

First, there was no evidence that any lack of ability to consult with a defense attorney or any lack of understanding the proceedings was the result of a mental illness or developmental disability. Although defendant stated he "suffer[ed] from P.T.S.D." when explaining why he yelled at the court, defendant was not qualified to offer an admissible opinion diagnosing his own mental health, and at no point did defendant indicate that he was repeating an expert's diagnosis rather than proffering his own, speculative self-assessment. Indeed, defendant reported he had never been examined for incompetence to stand trial. Further, defendant's intransigent behavior was, without more, not evidence of mental illness or developmental disability because

12

there is nothing to indicate his behavior was anything other than intentional and voluntary, and a defendant's "disruptive behavior in the courtroom and disputes with defense counsel" do "not constitute proof of mental incompetence" because competency to stand trial turns on "*competency to cooperate*, not cooperation." (*People v. Hightower* (1996) 41 Cal.App.4th 1108, 1112, italics added.) Were the rule any different, every unruly criminal defendant would be entitled to a competency hearing.

Second, and even if we overlook defendant's failure to adduce any admissible evidence of mental illness or developmental disability, defendant also failed to present substantial evidence of a present inability to consult with his lawyer or a lack of understanding of the proceedings against him. Two different judges independently determined that defendant was competent to represent himself, a standard that is *more demanding* than what is required to show competence to stand trial when represented by counsel.[10] (*People v. Johnson* (2012) 53 Cal.4th 519, 523, 530.) Nor were these proceedings defendant's first time representing himself in court, as he had represented himself in several civil cases as well as in civil appellate writ proceedings. Further, defendant's conduct while representing himself (including during a preliminary hearing), as well as his comments on the record while he was represented by counsel, indicate that he understood the nature of the proceedings, that he understood his constitutional and statutory rights to counsel and to discovery, that he was able to make arguments the court characterized as "legitimate," that he was able to conduct an effective cross examination, and that he understood many aspects

---

[10] Defendant does not challenge the two judges' decision permitting him to represent himself.

13

of criminal procedure. What is more, none of defendant's seven prior lawyers and none of the nine judges defendant appeared before in the two cases ever expressed any concern about defendant's ability to assist his counsel or to understand the proceedings until defendant's last appointed lawyer, who declared a doubt on the first day of trial after expressing that he was "in a quandary" about how to handle defendant's fixation on what counsel viewed as irrelevant issues.

Defendant offers what boil down to five arguments in support of his position that substantial evidence of his incompetence to stand trial was present. None of the arguments addresses the absence of evidence of mental illness or developmental disability, so none cure that defect. They also fail to cure the defect in the absence of substantial evidence of an inability to consult with counsel or a lack of understanding of the proceedings.

First, defendant urges us to apply a lower standard for evaluating competency; he cites *People v. Campbell* (1987) 193 Cal.App.3d 1653, for the proposition that, even if he is not entitled to a competency *hearing*, he is still entitled to the appointment of an expert to evaluate his competency "if there is a reasonable possibility" he "is unable to understand the proceedings or assist in his defense"—"even if it does not rise to the level of substantial evidence." (*Id.* at p. 1663.) However, our Supreme Court has repeatedly and explicitly declined to read *Campbell* as erecting a lower threshold for competency or for the appointment of an expert, instead holding that "[a]bsent a reasonable doubt as to defendant's mental competence, the trial court had no obligation to pursue the matter further." (*Howard*,

14

*supra*, 1 Cal.4th at p. 1164, fn. 12; *People v. Rodrigues* (1994) 8 Cal.4th 1060, 1112, fn. 16.)

Second, defendant points to his refusal to get along with his attorneys, as demonstrated by the long string of lawyers he was appointed and his seven *Marsden* hearings, as well as his threatening emails and other harassing conduct toward them. But disagreements between a defendant and his attorney over "which defense[s] to employ" and which issues and strategies to pursue do not, by themselves, constitute substantial evidence of incompetence to stand trial. (*Welch*, *supra*, 20 Cal.4th at p. 742.) And defendant's harassing conduct toward others is what prompted these cases in the first place; it is not evidence of his incompetence absent some proof it is involuntary—and no such evidence of that was presented.

Third, defendant contends that he did not understand the charges against him, and points to his repeated statements to that effect. Defendant's contention ignores the context in which his statements were made: Although defendant repeatedly said that the charges were "vague" and that he did not "understand" them, in each of those instances defendant further explained that the purported vagueness and his lack of understanding stemmed from his inability to match which communications corresponded with which of the dozen criminal charges. When these narrow complaints (which the prosecutor allayed by explaining the correlation) are read properly and balanced against defendant's myriad other statements indicating a clear understanding of the charges as well as their elements, defendant's profession of a lack of understanding does not constitute substantial evidence.

Fourth, defendant points to his repeated acts of disrespect, intransigence, and obstreperousness in court as substantial

15

evidence that he did not understand the proceedings or could not control his own behavior. It is not. As noted above, disruptive behavior by itself is insufficient and, as the trial court noted, defendant *was* able to act appropriately in court when it suited him. Defendant points to his counsel's reference to "quite a bit more [behavior]," but without elaboration or substantiation, this has no evidentiary weight.

Fifth and finally, defendant argues that he made several arguments to the trial court that were legally incorrect or rejected by the court (such as his request to obtain an immunity agreement). Of course, if that were the test of incompetence, the losing party and losing attorneys in every case would need to be examined for incompetence. Defendant also points to a few statements he made that misapprehend procedural points of legal practice. This, too, is insufficient to show substantial evidence of a lack of understanding—particularly in light of defendant's otherwise notable savvy about legal process.

When we view the totality of the evidence, including defense counsel's declaration of a doubt, there is no substantial evidence of defendant's mental illness or developmental disability and no substantial evidence that defendant was *unable* to cooperate with counsel or lacked an understanding of the proceedings; to the contrary, the evidence suggests defendant intentionally manipulated the system to forestall trial for nearly four years.

**DISPOSITION**

The judgment is affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, P.J.
HOFFSTADT


We concur:


_____, J.
BAKER


_____, J.
KIM (D.)