Filed 9/6/23  P. v. Hunter CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>JERMAINE HUNTER,<br><br>Defendant and Appellant. | F085223<br><br>(Super. Ct. No. CF02671879)<br><br>**OPINION** |

-ooOoo-

### THE COURT[*]

APPEAL from a judgment of the Superior Court of  Fresno County.  Jonathan B. Conklin, Judge.

Karriem Baker, under appointment by the Court of Appeal, for Defendant and Appellant.

Office of the Attorney General, Sacramento, California, for Plaintiff and Respondent.

-ooOoo-

---

[*]    Before Detjen, Acting P. J., Smith, J. and DeSantos, J.

## INTRODUCTION

In 2002, appellant and defendant Jermaine Hunter (appellant) was convicted after a jury trial of attempted murder (Pen. Code,[1] §§ 664/187) with firearm and great bodily injury enhancements.  He was sentenced to nine years plus 25 years to life.  (*People v. Hunter* (Apr. 14, 2004, F042521) [nonpub. opn.] (*Hunter*).)

In September 2022, the trial court denied appellant's section 1172.6 petition for resentencing.  On appeal, appellant's counsel filed a brief that summarized the facts and procedural history with citations to the record, raised no issues, and asked this court to independently review the record pursuant to both *People v. Delgadillo* (2022) 14 Cal.5th 216 and *People v. Wende* (1979) 25 Cal.3d 436.  Appellant submitted a letter brief raising several issues.  We will review the court's ruling, address appellant's contentions, and affirm the court's denial of his petition.

## FACTS[2]

Leroy Cole, Jr., testified that on New Year's Eve, 2001, he joined a number of people congregating at a Shell gas station in west Fresno.  Approximately 100– 150 individuals were gathered at the station.  Cole arrived at the station with Jermaine Johnson.  While at the station, Cole observed appellant and his cousin,

---

[1]     All further statutory citations are to the Penal Code.

[2]     The facts are from this court's nonpublished opinion in appellant's direct appeal in *Hunter*, *supra*, F042521, which the prosecutor attached as an exhibit in support of its opposition to defendant's petition.

In reviewing a section 1172.6 petition, the court may rely on "the procedural history of the case recited in any prior appellate opinion."  (§ 1172.6, subd. (d)(3); *People v. Clements* (2002) 75 Cal.App.5th 276, 292; *People v. Cooper* (2022) 77 Cal.App.5th 393, 406, fn. 9.)  The role of the appellate opinion is limited, however, and the court may not rely on factual summaries contained in prior appellate decisions or engage in fact finding at the prima facie stage.  (*Clements*, at p. 292; *People v. Lewis* (2021) 11 Cal.5th 952, 972 (*Lewis*).)  We have quoted the factual statement from appellant's direct appeal to place his current arguments in context, and will not rely on that factual statement to resolve his appeal from the trial court's order that found his petition did not state a prima facie case for relief.

Lateef Muldrew, get into a fight. Johnson was involved in breaking up the fight. During the fight, someone at the station fired a pistol and the crowd broke up and left.

Ten to 15 minutes later, Cole and Johnson arrived at the intersection of Modoc and O'Neil. Johnson got out of the car to talk to Falanda Haynes, the mother of his child. Meanwhile, Cole took a call on his cellular phone. Cole heard a number of shots, turned around and saw Johnson lying on the ground. Cole testified under a grant of immunity and admitted to previously being convicted of drug sales in 1992.

Royce Johnson (Royce) was also at the Shell station that night. Royce was driving a burgundy Cirrus Chrysler. He arrived at the station with appellant. After they arrived, appellant and Muldrew got into a fight. The fight broke up when shots rang out. Royce left and dropped appellant off on Kaviland Avenue between Walnut and Jenson Avenues and went home. Royce admitted to previously being convicted of a felony.

Detective Jennifer Federico with the Fresno Police Department's Gang Unit testified that she took a statement from Royce 11 days after the shooting. Royce initially told the detective that he was home all night. Royce subsequently admitted to being at the Shell station and dropping appellant off on Kaviland after leaving the party. Royce drove a car that was similar in description to the car spotted at the shooting.

Haynes testified that appellant is the father of her child. She saw appellant on New Year's Eve at the Shell gas station. While there, appellant got into a fight with Muldrew. Johnson was present but had nothing to do with the fight. Someone fired off some shots, and the crowd broke up. Appellant got into a car with Royce and left the area. Johnson and Cole also left, in a different direction, and Haynes followed. Johnson, Cole and Haynes ended up at the intersection of Modoc and O'Neil where Haynes spoke to Johnson at the curb. Haynes was walking back to her car when she saw someone walk up to Johnson and shoot him several times. Haynes identified appellant as the shooter. Appellant ran back to a waiting car. Haynes described the car as a burgundy, four-door Dodge Cirrus or Sea Breeze.

3.

Tanisha Wilson testified she was with Haynes that evening at the Shell station. She observed a fight break out between Muldrew and another man. Johnson was not involved in the fight. Afterward someone fired some shots and the crowd broke up. Wilson left with Haynes and went to the corner of Modoc and O'Neil where they saw Johnson. Haynes got out of the car and started talking to Johnson. Wilson heard shots and saw Haynes run to the car. The women drove away but, when Wilson realized it was Johnson who had been shot, they went back to the scene. Wilson was reluctant to testify for fear of being labeled a "snitch."

Johnson testified that he was with Cole on New Year's Eve and they arrived at the Shell station in the early morning hours of New Year's Day. At the station, Muldrew and appellant got into a fight. Cole intervened in the fight on behalf of Muldrew. After the fight, the crowd broke up and Johnson left with Cole. They went to the intersection of Modoc and O'Neil. Once he arrived, he got out of the car and began talking to Haynes. During the conversation Haynes paused and appeared to be looking at something. Johnson turned to see what she was looking at. When he turned, Johnson saw appellant, who he had known most of his life, pointing a gun at him. Appellant shot him in the chest.

As a result of the shot, Johnson was paralyzed from the chest down. Johnson admitted having a firearm with him on the night he was shot, but claimed he never fired it that night. Prior to the shooting, Johnson did not have any problems with appellant.

After the shooting, Johnson spoke with Detective Mark Yee of the Fresno Police Department Gang Unit. Johnson told Yee he did not know who shot him. Johnson said this because he did not want the police involved in his "business." Instead he preferred to have the "streets" handle the problem. While in the hospital, appellant called Johnson and told him to "keep it gangster." This meant to keep the police out of it. Johnson agreed, but changed his mind when he realized he was not in a position to protect himself. Johnson testified under a grant of use immunity, but stated the prosecutor never

4.

made a deal with him regarding his possession of a gun. Johnson admitted to previously being convicted of grand theft and making a threat, both felonies.

The parties stipulated that none of the shell casings found at the scene came from the victim's gun. In addition, the victim's gun was fully loaded at the time it was recovered from his pocket at the scene.

Charles Mack lived on the corner of Modoc and O'Neil. He heard shots on the night in question and went outside to see Johnson lying in the street. Mack claimed he never gave the police the description of a car leaving the scene because he did not see a vehicle leave the scene. Detective Junus Perry, who responded to the shooting, testified that he took a statement from Mack on the night of the shooting. Mack stated he saw a burgundy four-door vehicle leave the scene. He stated the car was driven by several African-American females.

**Defense Case**

Yee spoke with Johnson the day after he was shot. Johnson explained that he was standing on the corner talking to Haynes, when an unknown person walked up and shot him. When asked about a possible motive for the shooting, Johnson replied that some youngsters might have wanted to move up within their gang by committing the shooting. Johnson denied having a gun at the time of the shooting.

Approximately one week after the shooting Yee interviewed Haynes. He showed Haynes a photographic lineup containing appellant's picture, but Haynes was unable to make any identification. Yee showed Haynes a second photographic lineup and Haynes identified Royce as the driver of the car.

Yee testified that he spoke with Johnson on another occasion. The first time Yee spoke with Johnson, many family members were present. When Yee identified himself as a police officer, Johnson did not want to speak with him. In Yee's opinion, Johnson was not being straightforward when he spoke to him. On the second occasion, however, Johnson's family members were not present, and Johnson appeared to be more

5.

straightforward with the officer. In his second interview, Johnson identified appellant as the person who shot him.

Yee was qualified as an expert regarding African-American street gangs. He stated that the Fink White Deuces is an African-American gang that is associated with the neighborhood where Johnson was shot. Both Johnson and Cole were validated members of the Fink White Deuces at the time of the shooting. At the time of the incident, appellant was a member of the U-Boys gang, which was neutral to the Fink White Deuces. Yee stated that Royce was a member of the Chandler Park Gangsters at the time of the shooting. This gang is also neutral to the U-Boy gang. Yee stated that he had never seen a gang member attempt to set up another gang member through the court system. Yee stated that it is common for a personal issue to spark violence between gang members.

The parties stipulated that in early January 2002, a determination was made by the district attorney's office to prosecute Johnson for being a felon in possession of a firearm. Additionally, the court took judicial notice of the fact that, at the time of trial (November 2002), no charges had been filed against Johnson for being a felon in possession of a firearm.

## PROCEDURAL SUMMARY

On August 30, 2002, an information was filed in the Superior Court of Fresno County charging appellant with count 1, attempted murder of Johnson on January 1, 2002 (§§ 187, 664, subd. (a)), with special allegations that he personally and intentionally discharged a firearm that proximately caused great bodily injury (§ 12022.53, subd. (d)); he personally used a firearm (§ 12022.5, subd. (a)(1)); and he personally inflicted great bodily injury on the victim in the commission of the offense (§ 12022.7, subd. (a)). Appellant was also charged with count 2, felon in possession of a firearm (§ 12022, subd. (a)(1)).

6.

**The Jury Instructions**[3]

The jury was instructed with CALJIC No. 8.66 on the elements of count 1, attempted murder—that the prosecution had to prove there was (1) a direct but ineffectual act done by one person towards killing another person; and (2) the person committing the act harbored express malice aforethought, "namely, a specific intent to kill unlawfully another human being." The information did not allege, and the jury was not instructed on, a premeditation allegation for count 1.

CALJIC No. 17.19.5 defined the enhancement attached to count 1, that appellant personally and intentionally discharged a firearm and "proximately caused great bodily injury" to the victim during the commission of the offense (§ 12022.53, subds. (c), (d).) "The term 'intentionally and personally discharged a firearm,' as used in this instruction, means that the defendant himself must have intentionally discharged it. [¶] The term 'great bodily injury' means a significant or substantial physical injury. Minor, trivial or moderate injuries do not constitute great bodily injury."

CALJIC No. 17.20 defined another enhancement attached to count 1, that defendant "personally inflicted" great bodily injury on the victim in the commission of count 1, attempted murder.

The jury was not instructed on aiding and abetting, the felony-murder rule, the natural and probable consequences doctrine, conspiracy, or any theory of imputed malice.

---

[3] The prosecution attached the jury instructions as an exhibit in support of its opposition to appellant's petition for resentencing.

**Convictions and Sentence**

On November 20, 2002, after the jury trial, appellant was convicted of counts 1 and 2, and the special allegations were found true.

On February 20, 2003, appellant was sentenced to the upper term of nine years for count 1, plus 25 years to life for the section 12022.53, subdivision (d) personal discharge enhancement.

**Direct Appeal**

On April 14, 2004, this court filed the nonpublished opinion in *Hunter*, *supra*, F042521, in which it rejected appellant's contentions of prosecutorial misconduct, and instructional, evidentiary, and sentencing errors, and affirmed the judgment.

**PETITION FOR RESENTENCING**

The instant appeal is from the denial of appellant's petition filed in propria persona on August 15, 2022, for resentencing of his attempted murder conviction pursuant to section 1172.6. Appellant requested appointment of counsel.

Appellant's supporting declaration consisted of a preprinted form where he checked boxes that stated (1) a complaint, information, or indictment was filed against him that allowed the prosecution to proceed under a theory of felony murder, murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, or attempted murder under the natural and probable consequences doctrine; (2) he was convicted of murder, attempted murder, or manslaughter following a trial, or accepted a plea offer in lieu of a trial at which he could have been convicted of murder or attempted murder; and (3) he could not presently be convicted of murder or attempted murder because of changes made to sections 188 and 189, effective January 1, 2019.

On September 2, 2022, the trial court appointed counsel.

**The People's Opposition**

On September 20, 2022, the prosecution filed opposition to the petition with supporting exhibits of this court's nonpublished opinion in *Hunter*, *supra*, F042521 that affirmed appellant's convictions on direct appeal and the jury instructions given at his trial.

The prosecution argued appellant was ineligible for resentencing because the jury was not instructed on felony murder, the natural and probable consequences doctrine, or any imputed malice theory. The attempted murder instruction stated the jury had to find appellant acted with the specific intent to kill, and the jury found true the enhancement that he personally inflicted great bodily injury on the victim.

**Appellant's Reply**

On September 28, 2022, appellant's counsel filed a reply to the opposition, and argued the trial court could not make the prima facie determination by relying on this court's opinion that affirmed appellant's conviction on direct appeal.

### THE COURT'S DENIAL OF THE PETITION

On September 30, 2022, the trial court conducted a hearing on appellant's petition. Appellant's counsel was present, and appellant had validly waived his presence.

The court gave a tentative ruling that appellant failed to make a prima facie case for resentencing. "Based on a review of all the records in this case, all the appropriate files … including the facts from the appellate opinion, it appears the defendant was the actual shooter after the fight that occurred at the gas station. Based upon a review of the file it does appear that the issue at trial was the identification of the actual shooter that turned out to be the defendant."

The trial court invited argument from the parties. The prosecutor declined. Appellant's counsel stated she had reviewed the file "pretty thoroughly," and declined to argue the matter.

9.

The trial court adopted its tentative ruling and stated that "based upon a review of the appropriate facts and evidence," appellant was "the actual shooter," he failed to make a prima facie case for resentencing, and he was ineligible for resentencing.[4]

On October 25, 2022, appellant filed a timely notice of appeal.

## DISCUSSION

### I.  The Trial Court's Findings

We first note that when appellant filed his petition, the trial court complied with section 1172.6 and appointed counsel, provided for further briefing, conducted a hearing on the petition, and stated reasons for denying the petition.  (§ 1172.6, subds. (b), (c).)

The prima facie inquiry under section 1172.6, subdivision (c) is "limited."  (*Lewis*, *supra*, 11 Cal.5th at p. 971.)  The court " ' "takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved.  If so, the court must issue an order to show cause." ' [Citations.]  '[A] court should not reject the petitioner's factual allegations on credibility grounds without first conducting an evidentiary hearing.' [Citations.]  'However, if the record, including the court's own documents, "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner." ' " (*Ibid.*)

---

[4]     At the conclusion of the hearing, appellant's counsel advised the court that appellant wanted the court to consider recalling and resentencing him pursuant to former section 1170.03 (now renumbered as section 1171.2).  (*People v. McMurray* (2022) 76 Cal.App.5th 1035, 1038, 1040; *People v. Codinha* (2023) 92 Cal.App.5th 976, 996.) "Section 1172.1 authorizes a sentencing court to recall a sentence and resentence a defendant within 120 days of the date of commitment on its own motion or at any time on recommendation of the Department."  (*Codinha*, at p. 983, fn. 3.)

After raising the issue, defense counsel said she explained to appellant that a section 1170.03 motion was not on calendar and the section 1172.6 hearing was not the appropriate venue to raise it.  The court replied counsel correctly advised appellant and it would not address section 1170.03.  Appellant has not raised any issues about this attempted motion in the instant appeal.

10.

At the hearing on appellant's petition, the trial court stated it had relied on all the records in the case, "including the facts from the appellate opinion," and that appellant "was the actual shooter after the fight that occurred at the gas station," and found appellant failed to state a prima facie case. In making these statements, it appears the court relied on the factual statement from this court's opinion from appellant's direct appeal that the prosecution had filed as a supporting exhibit, which summarized trial testimony from eyewitnesses who identified appellant as the gunman.

As explained above, however, the role of an appellate opinion is limited, and the trial court erroneously relied on the factual summary contained in this court's opinion that affirmed his convictions on direct appeal to find his petition failed to state a prima facie case. (*People v. Clements*, *supra*, 75 Cal.App.5th at p. 292; *Lewis*, *supra*, 11 Cal.5th at p. 972.)

To demonstrate prejudice from the court's error, the moving party must show it is reasonably probable that, absent the error, his petition would not have been denied without an evidentiary hearing. (*Lewis*, *supra*, 11 Cal.5th at p. 974; *People v. Watson* (1956) 46 Cal.2d 818, 836.) In determining prejudice, we may review the record of conviction which includes the jury instructions (*People v. Williams* (2022) 86 Cal.App.5th 1244, 1251; *People v. Offley* (2020) 48 Cal.App.5th 588, 599; *People v. Harden* (2022) 81 Cal.App.5th 45, 50, 54–55), the closing arguments, and the verdict. (*People v. Lopez* (2022) 78 Cal.App.5th 1, 13; *People v. Ervin* (2021) 72 Cal.App.5th 90, 106; *People v. Jenkins* (2021) 70 Cal.App.5th 924, 935.)

"Attempted murder requires the specific intent to kill and the commission of a direct but ineffectual act toward accomplishing the intended killing." (*People v. Lee* (2003) 31 Cal.4th 613, 623; *People v. Perez* (2010) 50 Cal.4th 222, 229–230.) We find the trial court's brief reference to the direct appeal was not prejudicial because the record of conviction shows appellant was ineligible for resentencing as a matter of law. The jury was instructed with CALJIC No. 8.66 on the elements of count 1, attempted

murder—that the prosecution had to prove there was (1) a direct but ineffectual act done by one person towards killing another person; and (2) the person committing the act harbored express malice aforethought, "namely, a specific intent to kill unlawfully another human being." The jury was not instructed on aiders and abettors, the felony-murder rule, the natural and probable consequences doctrine, or any theories of imputed malice.

To the extent the court improperly relied on the facts stated in the prior appellate opinion to deny appellant's petition without issuing an order to show cause, that reliance was not prejudicial because the jury instructions and verdict show that appellant was convicted of attempted murder based on his own specific intent to kill and not on any theories of imputed malice, and he was ineligible for resentencing under section 1172.6 as a matter of law.

## II. Appellant's Contentions

In his letter brief, appellant contends the trial court improperly denied his petition without issuing an order to show cause only because the court erroneously believed a conviction for attempted murder "categorically precludes relief" under section 1172.6. In making this argument, appellant asserts he was convicted of " 'willful, deliberate, and premeditated' attempted murder, i.e., attempted first degree murder," and the court improperly held that "a conviction for attempted first degree murder" was ineligible for section 1172.6 relief as a matter of law.

Appellant further contends that his conviction for "attempted first degree murder" was eligible for resentencing based on *People v. Rivera* (2021) 62 Cal.App.5th 217 (*Rivera*). He acknowledges *Rivera* addressed a murder conviction, but argues the same analysis would apply to his case because he could have been convicted of "attempted first degree murder" based on the natural and probable consequences doctrine, as the defendant in *Rivera*.

12.

In *Rivera*, testimony before a grand jury showed that defendant drove an accomplice to a location where the accomplice shot and killed a victim, and they were indicted for murder with special circumstances. Defendant pleaded guilty to second degree murder, and later filed a petition for resentencing under section 1172.6. Defendant argued that his accomplice "was the actual shooter," and "highlighted the lack of evidence that he shared or knew of [the accomplice's] intent, that he knew [the accomplice] had a gun, or that he assisted [the accomplice] in any way except by driving the car." The trial court summarily denied the petition without issuing an order to show cause. (*Rivera*, *supra*, 62 Cal.App.5th at pp. 224–226.)

*Rivera* rejected the trial court's reliance on the grand jury testimony to summarily deny the resentencing petition. (*Rivera*, *supra*, 62 Cal.App.5th at p. 238.) *Rivera* further held defendant "not only filed a facially sufficient petition but, with the assistance of counsel, offered a theory under which the evidence presented to the grand jury was consistent with his guilt of murder under the natural and probable consequences doctrine, based upon an intent to participate in a target offense of assault. [Citation.] In doing so, he created a factual dispute that cannot be resolved at the prima facie stage since nothing in the record definitively foreclosed his theory." (*Id*. at p. 239.)

In reaching this holding, *Rivera* noted that it was "undisputed that a conviction of second degree murder does not, in and of itself, bar a petition under section [1172.6]," and there was nothing in the generic language of the charging document that would have limited the People from prosecuting defendant on any particular theory if the case against defendant had gone to trial. (*Rivera*, *supra*, 62 Cal.App.5th at pp. 232–233.) When the defendant pleaded guilty to second degree murder with malice aforethought, the plea did not foreclose that such malice could have been imputed to him under the felony-murder rule or natural and probable consequences doctrine. (*Id*. at p. 234.)

## Analysis

There are several problems with appellant's arguments. First, he was not convicted of "attempted first degree murder." "[A]ttempted premeditated murder and attempted unpremeditated murder are not separate offenses. *Attempted murder is not divided into different degrees.* [Citations.] '[T]he provision in section 664, subdivision (a), imposing a greater punishment for an attempt to commit a murder that is "willful, deliberate, and premeditated" does not create a greater degree of attempted murder but, rather, constitutes a penalty provision that prescribes an increase in punishment (a greater base term) for the offense of attempted murder.' [Citation.] '[T]he statutory language employed in prescribing an additional penalty for attempted murder … reflects a legislative intent to create a penalty provision specifying a greater term, rather than a substantive offense.' [Citations.] Thus, 'premeditated attempted murder is not a separate offense from attempted murder.' " (*People v. Favor* (2012) 54 Cal.4th 868, 876–877, italics added.)

In this case, appellant was charged in count 1 with attempted murder. A premeditation allegation was not attached to count 1, the jury was not instructed on premeditation, and the jury convicted him as charged of attempted murder and did not return a finding on any premeditation allegation.

As for appellant's reliance on *Rivera*, that case is distinguishable from the instant matter because *Rivera* addressed defendant's guilty plea to second degree murder and the trial court's erroneous finding that defendant's plea to an offense committed with malice aforethought made him ineligible for relief under section 1172.6. (*Rivera*, *supra*, 62 Cal.App.5th at p. 234.)

In contrast, appellant was convicted in this case after a jury trial, and the jury was correctly instructed with CALJIC No. 8.66 that it could only convict him of attempted murder if the prosecution proved beyond a reasonable doubt that appellant "harbored express malice aforethought, namely, a *specific intent to kill* unlawfully another human

being." (CALJIC No. 8.66, italics added.) The jury was not instructed on any imputed malice theories.

Since the crime of attempted murder requires a specific intent to kill and the jury was so instructed, the jury's guilty verdict on count 1 necessarily meant that it found that appellant acted with express malice and the specific intent to kill the victim. (See *People v. Guerra* (1985) 40 Cal.3d 377, 386 ["the crime of attempted murder requires a specific intent to kill, a mental state coincident with express malice"]; see also *People v. Didyavong* (2023) 90 Cal.App.5th 85, 95 ["Express malice exists 'when there is a manifest intent to kill' "].)

## **DISPOSITION**

The trial court's order of September 30, 2022, denying appellant's petition for resentencing, is affirmed.